Thomas STULTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–01314–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 6, 2000.

Thomas Stults, Winston E. Cochran, Houston, for appellants.

S. Elaine Roch, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, ANDERSON, and FROST.

## SUBSTITUTE OPINION

KEM THOMPSON FROST, Justice.

The appellant's motion for rehearing is denied. The panel's opinion of May 4, 2000, is withdrawn, and this opinion is issued in its place.

### INTRODUCTION

The appellant, Thomas Stults, challenges his conviction on one count of terroristic threat. In three points of error, he claims: (1) the trial court erred in refusing to allow adequate cross-examination of the complainant as to her ongoing fear of the appellant; (2) the trial court erred in overruling various motions before and during trial; and (3) the appellant received ineffective assistance of counsel. We overrule these points of error and affirm the judgment of the trial court.

### FACTUAL BACKGROUND

Thomas Stults, the appellant, and Mary Geary, the complainant, were married in September 1990, and divorced in January 1997. For a brief period of time, they reconciled, and the appellant moved back into the complainant's house. In April 1998, however, the complainant decided the reconciliation was not working and asked the appellant to move out by April 7th. On April 7th, the complainant re-

turned home from work to find the appellant in her home. When the complainant asked the appellant to leave, he became angry, and they began to argue. During the course of the argument, the appellant shoved the complainant onto the bed and told her that he was going to see that "this is over once and for all." He jerked open the nightstand drawer, pulled out a loaded pistol, and left the house. The complainant heard the gun discharge and thought the appellant had killed himself. She called the police, and while she was on the phone, the appellant appeared, telling her, "It's a good thing you called somebody to come save you, help you, rescue you ... before I kill you." He then told the complainant that if she wanted to mess up his life, she should call the police and "end up like Nicole Simpson." Frightened, the complainant left the house, taking the portable telephone with her, and called for help.

Sergeant Gary Latham, a Harris County constable, arrived at the complainant's home a short time latter. He found the complainant upset, distraught, and afraid. The complainant explained to Sergeant Latham what had happened and told him of her fears of being injured or killed. The complainant also told the constable that she was concerned the appellant might injure or kill himself. Sergeant Latham then talked to the appellant, who said he was tired of the problems between the complainant and himself. The appellant explained to the constable that the complainant had asked him to leave the house and that he was upset, "it was wrong,"[1] and no one had been hurt. The appellant admitted to the constable that he had fired the gun and that the gun was in a locked car at the home. Sergeant Latham testified that after he obtained per-mission from the appellant to retrieve the weapon, he spoke to his fellow officer, Deputy Uilkie,[2] who obtained the car keys from the complainant, unlocked the car, and retrieved the gun.

Charged with one count of making a terroristic threat,[3] the appellant was tried before a jury and found guilty. The trial court assessed punishment at 180 days in the Harris County Jail, probated over eighteen months. The appellant filed a motion for new trial, which the trial court denied.

## LIMITATIONS ON CROSS-EXAMINATION OF COMPLAINANT

In his first point of error, the appellant contends the trial court erred in refusing to allow him adequate cross-examination of the complainant concerning her ongoing fear of the appellant. The trial court limited cross-examination by: (1) disallowing further questions on specific meetings between the appellant and the complainant after the incident, and (2) disallowing questioning on why the complainant continued to associate with the appellant if she was afraid of him. The State claims that the appellant did not preserve this point of error for appellate review. We disagree.

When the trial court prevents a defendant from eliciting certain *specific responses* from a State's witness, defense counsel preserves error by either (1) calling the witness to the stand outside the presence of the jury and having the witness answer specific questions or (2) making an offer of proof on questions he would have asked and answers he might have received. *See Koehler v. State*, 679 S.W.2d 6, 9 (Tex.Crim.App.1984); *Jefferson v. State*, 900 S.W.2d 97, 100 (Tex.App.—

---

1. The record is unclear as to what "it" means. "It" could refer to the appellant being asked to leave the house, the disturbance, the problems resulting from the incident, or perhaps something else.

2. Deputy Uilkie's first name is not in the record.

3. The Texas Penal Code prohibits a person from threatening to commit an offense involving violence to any person with intent to place her in fear of imminent serious bodily injury. *See* TEX. PENAL CODE, § 22.07 (1994).

Houston [14th Dist.] 1995, no pet.). However, when the trial court denies a defendant the opportunity to question a witness for the State in the presence of the jury about an entire subject matter that might have shown she lacked credibility, such as malice, ill will, motive, or bias, defense counsel preserves error by stating the subjects on which he intends to question the witness. *See Virts v. State,* 739 S.W.2d 25, 29 (Tex.Crim.App.1987); *see also Recer v. State,* 821 S.W.2d 715, 717 (Tex.App.— Houston [14th Dist.] 1991, no pet.) (finding the appellant preserved error when the record clearly showed that the appellant's counsel wanted to question the complainant further about the extent of the complainant's relationship with the appellant's husband to establish bias, ill will, and animus towards the appellant). In this case, the appellant wanted to demonstrate that the complainant was not afraid of him by showing that after the incident in April 1998, the two of them continued to engage in ongoing communications and meetings. The record clearly reflects that the appellant's counsel wanted to question the complainant further about her ongoing fear of the appellant in order to establish motive, bias, or self-interest in calling the police and that the trial court limited that questioning. We find the appellant has preserved this point of error for review.

■ Turning to the merits of the appellant's claim, we review a trial court's decision to exclude evidence under an abuse of discretion standard. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App. 1996). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or principles. *See Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim.App.1991) (op. on reh'g).

■ The confrontation clause of the United States Constitution guarantees a defendant the right to cross-examine witnesses. *See* U.S. CONST. Amend. VI; *Delaware v. Van Arsdall,* 475 U.S. 673, 678, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Carroll v. State,* 916 S.W.2d 494, 496–97

(Tex.Crim.App.1996). A defendant may cross-examine a witness on any subject reasonably calculated to attack her credibility, such as exposing a motive, bias, or interest. *See Carroll,* 916 S.W.2d at 498. "However, the trial court has considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose." *Recer,* 821 S.W.2d at 717 (citing *Green v. State,* 676 S.W.2d 359, 363 (Tex.Crim.App. 1984)). The court has the discretion to limit the scope of cross examination "to avoid, *inter alia,* harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Lagrone v. State,* 942 S.W.2d 602, 613 (Tex.Crim.App.1997). This limitation does not violate the accused's right to confront a witness as long as (1) the possible bias and motive of the State's witness is clear to the trier of fact and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination. *See Carmona v. State,* 698 S.W.2d 100, 104 (Tex.Crim. App.1985); *Recer,* 821 S.W.2d at 718 (citations omitted). In *Recer,* the trial court limited questions to the complainant after defense counsel tried to question her about specific conversations and conduct with the appellant's husband that occurred well before and long after the offense; this limitation was reasonable because the extent of the relationship between the complainant and the appellant's husband had already been well established for the jury. 821 S.W.2d at 717–18.

■ In this case, as in *Recer,* the appellant's counsel already had made the possible bias and motive of the complainant clear to the jury. The trial court afforded the defense an opportunity for a thorough and effective cross-examination of the complainant. It is well established in the record that the appellant and the complainant saw each other several times after the incident in April 1998. The complainant admitted to seeing the appellant six times in person. She also exchanged numerous

telephone calls and electronic mail messages with the appellant. At trial, the appellant's counsel questioned the complainant in detail about the specific times she had been alone with the appellant. The complainant gave detailed accounts of her post-April 1998 encounters with the appellant, stating that she had met him at a shopping mall to talk, that she had bought him dinner at a restaurant, and that he had come by her house, with her consent, on at least one occasion after his arrest for the April 1998 incident. The trial court limited cross-examination by disallowing further questions on specific meetings with the appellant that occurred after the incident because it had already been established that the complainant had seen the appellant since the incident. The trial court properly ruled such testimony was irrelevant and repetitive.

The trial court also limited cross-examination by disallowing appellant's counsel's questioning of the complainant as to why the complainant continued to associate with the appellant if she was afraid of him. The trial court ruled the inquiry and any response to it was irrelevant. We agree. In addition, we find that the question likely would have confused the issue before the jury. One element of the offense of terroristic threat is that a person is placed in fear of *imminent* serious bodily injury. *See* TEX. PENAL CODE § 22.07 (Vernon 1994). Had the trial court allowed the questioning, the jury could have become confused and formed the mistaken belief that the relevant inquiry in determining whether the appellant made a terroristic threat was whether the complainant continued to be afraid of the appellant after the incident. The focus of the jury's inquiry should be whether the complainant was afraid of imminent serious bodily injury *at the time of the offense.* Therefore, the trial court acted in accordance with guiding rules and principles and did not abuse its discretion by limiting the cross-examination of the complainant. We overrule the first point of error.

### RULINGS ON MOTIONS

In his second point of error, the appellant contends the trial court erred in: (a) overruling the motion to suppress evidence of the pistol, which the appellant claims the State obtained in an unlawful search and seizure; (b) overruling the motion for mistrial after having been advised of a conversation between one of the jurors and the State's witnesses; and (c) failing to examine the State's witnesses before ruling on the motion for mistrial.

The State's initial response is that these points are multifarious and therefore not subject to review. A multifarious point is one that embraces more than one specific ground. *See McGuire v. McGuire,* 4 S.W.3d 382, 385 (Tex.App.— Houston [1st Dist.] 1999, no pet.). While we may disregard and refuse to review multifarious points of error, we may also elect to consider them if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made. *See State v. Interstate Northborough Partnership,* 8 S.W.3d 4, 7 (Tex. App.—Houston [14th Dist.] 1999, pet. filed). Because we are able to identify the appellant's complaints in his second point of error with reasonable certainty, we will consider them.

### Motion to Suppress

First, we address the appellant's contention that the pistol the officers recovered from the car is the fruit of an unlawful search and seizure. To preserve error on a claim of illegal seizure, defense counsel must either file a motion to suppress or object when the evidence is offered. *See Roberts v. State,* 545 S.W.2d 157, 158 (Tex.Crim.App.1977). An objection should be made as soon as the ground for objection becomes apparent, which is generally when the item is offered into evidence. *See Dinkins v. State,* 894 S.W.2d 330, 355 (Tex.Crim.App.1995). However, defense counsel must object *before* substantial testimony is given regard-

ing the alleged illegally seized item. *See Angelo v. State*, 977 S.W.2d 169, 177 (Tex. App.—Austin 1998, pet. ref'd) (citing *Dinkins*, 894 S.W.2d at 355) (finding substantial testimony about a bag of the defendant's wife's clothes when the state had already [1] asked the defendant if he took her clothes and [2] made repeated references to the bag of clothing while the defense counsel was objecting on the wrong grounds). Even constitutional rights, such as protection from an unlawful search and seizure, can be waived by failing to object in a timely manner. *See Little v. State*, 758 S.W.2d 551, 564 (Tex. Crim.App.1988).

 In this case, the ground for objection should have been apparent to the appellant long before trial because the appellant was in the best position to know whether he gave consent to the officers to search his car. Nevertheless, the appellant failed to file a pretrial motion to suppress the gun or otherwise challenge the search that yielded it before trial commenced. Having failed to make a pretrial challenge, in order to preserve error, it was incumbent upon the appellant to object before the court received substantial testimony about the gun. Defense counsel, however, did not object until the State offered the gun into evidence. By that time, Sergeant Latham and Deputy Uilkie had made repeated references to the pistol, giving substantial testimony about it. By failing to object in a timely fashion, the appellant failed to preserve error on this subpoint.

## Motion for Mistrial

 Next, we address the appellant's contentions in subpoints (b) and (c)

relating to the trial court's rulings in connection with his motion for mistrial. The trial court has discretion to grant or deny a motion for mistrial. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995). An appellate court does not substitute its judgment for that of the trial court but decides whether the trial court's decision constitutes an abuse of discretion. *See id.; Buentello v. State*, 826 S.W.2d 610, 613 (Tex.Crim.App.1992).

The appellant's motion for mistrial was based on a conversation between one of the jurors and the arresting officers (Sergeant Latham and Deputy Ulkie), who were the State's witnesses. The appellant alleged that the conversation took place during a break in the trial.

 "No person shall be permitted to converse with a juror *about the case on trial* except in the presence and by the permission of the court." TEX.CODE CRIM. PROC. art. 36.22 (Vernon 1981) (emphasis added). Harm to the accused is *presumed* when a juror converses with an unauthorized person about the case. *See Quinn v. State*, 958 S.W.2d 395, 401 (Tex.Crim.App. 1997). If the presumption of harm arises, the State has the burden to rebut this presumption by showing no injury or prejudice. *See id.*

 A new trial must be granted "when a juror has talked with anyone *about the case.*" TEX.R.APP. P. 21.3(f) (emphasis added). When a witness makes a remark to a juror about the appellant's case, the exchange does not have to be a full discussion of the specifics of the case before harm results. *See McIntire v. State*, 698 S.W.2d 652, 659 (Tex.Crim.App. 1985).[4] The defendant, however, has the

---

**4.** Although the appellant cites *McIntire* in his brief, he does not address how his case is similar, nor does he undertake any argument or analysis in applying *McIntire* to the facts in the case at bar. Conclusory arguments which cite no authority present nothing for our review. *See* TEX.R.APP. P. 38.1(h); *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App. 1992); *Atkins v. State*, 919 S.W.2d 770, 774–

75 (Tex.App.—Houston [14th Dist.] 1996, no pet.) (citations omitted). Citing only one case does not guarantee that a point will adequately present a point for review. *See McFarland v. State*, 845 S.W.2d 824, 848 (Tex.Crim.App. 1992), *overruled on other grounds, Bingham v. State*, 915 S.W.2d 9 (Tex.Crim.App.1994). While we find this subpoint is not adequately

initial burden to show the conversation was about the case. *See Chambliss v. State,* 647 S.W.2d 257, 265–66 (Tex.Crim. App.1983); *Ites v. State,* 923 S.W.2d 675, 677 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). This burden is not satisfied when the person who saw the juror speaking to the witness does not know what the two were discussing. *See Orellana v. State,* 686 S.W.2d 703, 704 (Tex.App.—Corpus Christi 1985), *aff'd,* 706 S.W.2d 660 (Tex.Crim.App.1986). In this case, the appellant's counsel specifically informed the trial court that the two individuals who claim to have seen the juror speaking to the arresting officers "do not know what they spoke about." Thus, the appellant did not satisfy his initial burden of showing that the conversation between the juror and the State's witnesses was about the case. The second subpoint is overruled.

 In his third subpoint, the appellant contends the trial court erred in ruling on his motion for mistrial without first examining the two arresting officers. The appellant claims that as a result of the trial court's failure, the State did not meet its burden of overcoming the presumption of harm. Generally, the testimony of all participants in an unauthorized conversation is necessary to enable a court to determine whether injury or prejudice occurred as a result of a conversation between a juror and a third party. *See Horst v. State,* 758 S.W.2d 311, 315 (Tex.App.—Amarillo 1988, pet. ref'd) (interpreting *West v. State,* 116 Tex.Crim. 468, 34 S.W.2d 253, 261 (1930) and *Toussaint v. State,* 92 Tex.Crim. 374, 244 S.W. 514, 517–18 (1922)). However, the court is not required to receive testimony from all of the participants in the conversation about the case until the defendant *first* shows the conversation was *about the case.* Here, the appellant did not show the conversation was about the case, nor is

there anything in the record to indicate the appellant had any reason to believe the conversation pertained to the case. The appellant did not allege that the conversation related to the proceedings nor did he indicate that he had been prevented from discovering the nature of the communications. It was incumbent upon the appellant to come forward and make some showing that the conversation made the subject of his motion for mistrial pertained to the case. Absent such a showing, the presumption of harm did not arise, and the burden never shifted to the State to rebut that presumption. The third subpoint is overruled.

Having found that the first subpoint presents nothing for review and finding that the defendant did not meet his threshold burden in connection with the errors alleged in the second and third subpoints, we overrule the second point of error.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third point of error, the appellant contends that his counsel was ineffective for failing to: (a) elicit valuable testimony from a defense witness, Jack R. Evans, on the complainant's motives and intentions; (b) elicit testimony from the appellant regarding whether he waived his constitutional protection against unreasonable search and seizure and regarding statements made to him by the complainant which would show she never believed the offense took place; (c) call two witnesses whose testimony would have been valuable to the only defense available; and (d) utilize documentation prepared by the appellant which the appellant claims would have been valuable in cross-examining the complainant at trial.[5]

 Both the federal and state constitutions guarantee an accused the right

---

briefed, we nonetheless address the merits of this claim.

**5.** The appellant claims that he kept a detailed log on the nature and contents of his contacts and communications with the complainant, that he entrusted these records to his trial counsel, and that trial counsel failed to bring the log to court for the appellant's trial.

to have the assistance of counsel. *See* U.S. CONST. Amend. VI; TEX. CONST. ART. I, § 10; TEX.CODE CRIM. PROC. art. 1.05 (Vernon 1977). The right to counsel includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. at 668, 686, 104 S.Ct. 2052 (1984); *Ex parte Gonzales,* 945 S.W.2d 830, 835 (Tex.Crim.App.1997). Both state and federal claims of ineffective assistance of counsel are evaluated under the two prong analysis articulated in *Strickland. See Thompson v. State,* 9 S.W.3d at 812 (Tex. Crim.App.1999). The first prong requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. To satisfy this prong, the appellant must (1) rebut the presumption that counsel is competent by identifying the acts and/or omissions of counsel that are alleged as ineffective assistance and (2) affirmatively prove that such acts and/or omissions fell below the professional norm of reasonableness. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Thompson,* 9 S.W.3d at 813.

The second prong of *Strickland* requires the appellant to show prejudice resulting from the deficient performance of his attorney. *See Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App. 1999). To establish prejudice, the appellant must prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *See Jackson v. State,* 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceedings." *Id.* The appellant must prove his claims by a preponderance of the evidence. *See id.*

In any case analyzing the effective assistance of counsel, we begin with the strong presumption that counsel was competent. *See Thompson,* 9 S.W.3d at 813; *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994) (en banc). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson,* 877 S.W.2d at 771. The appellant has the burden of rebutting this presumption by presenting evidence illustrating why trial counsel did what he did. *See id.* The appellant cannot meet this burden if the record does not specifically focus on the *reasons* for the conduct of trial counsel. *See Osorio v. State,* 994 S.W.2d 249, 253 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Kemp v. State,* 892 S.W.2d 112, 115 (Tex.App.—Houston [1st Dist.] 1994, pet. ref'd). This kind of record is best developed in a hearing on an application for a writ of habeas corpus or a motion for new trial. *See Kemp,* 892 S.W.2d at 115; *see also Jackson,* 973 S.W.2d at 957 (stating that when counsel is allegedly ineffective because of errors of omission, collateral attack is the better vehicle for developing an ineffectiveness claim).

When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court. *See Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.) (citing *Jackson v. State,* 877 S.W.2d at 771). An appellate court will not speculate about the reasons underlying defense counsel's decisions. For this reason, it is critical for an accused relying on an ineffective assistance of counsel claim to make the necessary record in the trial court. Even though the appellant may file a motion for new trial, failing to request a hearing on a motion for new trial may leave the record bare of trial counsel's explanation of his conduct. *See Gibbs v. State,* 7 S.W.3d 175, 179 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). If there is no hearing, or if counsel does not appear at the hearing, an affidavit

from trial counsel becomes almost vital to the success of an ineffective assistance claim. *See Howard v. State,* 894 S.W.2d 104, 107 (Tex.App.—Beaumont 1995, pet. ref'd).

 In this case, the appellant moved for a new trial but failed to include an affidavit from trial counsel. The appellant also failed to request a hearing on his motion until after the trial court had overruled it. The appellant did not file a habeas corpus petition. We can find no evidence in the record regarding trial counsel's strategy. The appellant argued in his motion for new trial that defense counsel had access to the log he prepared, never bothered to read it, and failed to bring it to court. According to appellant, his counsel's failure to read the log is "tantamount to failing to properly investigate." The appellant argues that such a minimal duty of defense counsel cannot be claimed as strategy and therefore, no such evidence is necessary to find ineffective assistance of counsel. There is nothing in the record, however, to support counsel's factual assertion.[6] Aside from the appellant's unsupported allegation, the record is barren of any evidence showing trial counsel failed to read the log.

Whatever trial counsel's reasons may have been for pursuing the chosen course, in the absence of a record identifying these reasons, we must presume they were made deliberately as part of sound trial strategy. Because we are unable to conclude that defense counsel's performance fell below an objective standard without evidence in the record, we find that the appellant has failed to meet the first prong of *Strickland.*[7] Accordingly, we overrule the appellant's third point of error.

The judgment of the trial court is affirmed.

---

6. Although the appellant forcefully argues that his counsel failed to elicit testimony, failed to call witnesses that would have supported his case, and failed to utilize documentation in the cross-examination of the complainant, accepting these arguments would necessarily require us to speculate about counsel's strategy. When the record is silent as to defense counsel's strategy, we will not guess at counsel's trial tactics or speculate about his reasons for taking certain actions and not taking others. Indeed, such speculation could just as easily support the notion that trial counsel acted reasonably and competently in making the decisions now forming the basis for the appellant's ineffective assistance claims. For example, there may be many logical and reasonable explanations for not calling certain witnesses, such as a belief that these witnesses would not favorably impress the jury or that they were susceptible to impeachment and therefore presented more potential for harm than help. Likewise, counsel may have elected not to elicit certain testimony or utilize the documentation the appellant prepared because counsel determined that it would not have advanced the appellant's position.

7. Because the first prong of *Strickland* is not met, it is not necessary to discuss the second prong.