Opinion issued June 6, 2002






 







In The

Court of Appeals

For The

First District of Texas






NO. 01-00-01204-CR






ARMANDO SIERDA ABAD, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 180th District Court

Harris County, Texas

Trial Court Cause No. 818923






O P I N I O N


 A jury found appellant, Armando Sierda Abad, guilty of possession with intent
to deliver cocaine weighing at least 400 grams. The jury assessed punishment at 30
years in prison and a $100,000 fine. In three points of error, appellant (1) challenges
the factual sufficiency of the evidence, (2) claims the court erred in denying his
motion to dismiss based on entrapment, and (3) asserts it was error to admit the
cocaine as evidence. We affirm.

Background and Procedural History

 Pepito Canoy, a Filipino sailor, is a paid informant who worked with Special
Agent Dennis Lorton of the United States Customs Service on a narcotics
investigation. After an attempted controlled delivery of cocaine to another party was
unsuccessful, Agent Lorton had Canoy contact appellant and attempt to set up a
meeting.

 Appellant agreed to meet Canoy at a Harris County motel. Customs agents and
Houston Police set up surveillance equipment in a motel room where they intended
the transaction to take place. After receiving a call from appellant, Canoy told the
officers that he was going to meet appellant in the motel parking lot. Houston Police
Officer Daniel Eller saw appellant drive into the motel parking lot in a maroon van
and noted the license plate number. 

 Canoy met with appellant in the van, but left the drugs in the motel room. 
According to Canoy, appellant said he would pay $15,000 for the cocaine, but he did
not have any money with him. Canoy returned and reported that appellant would not
come up to the room. Canoy then took the cocaine, weighing 2.9 kilograms, down
to the parking lot in a plastic grocery bag. According to Canoy, appellant willingly
accepted the cocaine, placed it in his car, and left. The surveillance team, anticipating
a transaction in the motel room and confused by the location change, lost sight of the
van. A search based on the license plate number revealed that the vehicle was
registered to appellant and produced an address. 

 Officers and agents, including Agent Lorton, went to the address and saw the
maroon van parked on the apartment complex grounds. Appellant was seen in a dark
Acura car backed into a space in the apartment complex parking lot. He initially
appeared to be driving out of the parking space, but then backed up and hit another
car. After speaking briefly to the driver of the other car, appellant entered his
apartment. While waiting for more officers to arrive, Agent Lorton saw appellant
leave the apartment and go to the maroon van. Agent Lorton and Agent Nigel Brooks
then stopped appellant before he could leave. The agents were granted permission
to search the van and the apartment. These searches turned up nothing.

 Agent Brooks spoke to Leighna Hernandez, who was in the apartment along
with appellant's girlfriend. Hernandez's parents owned the Acura appellant was
previously seen driving. She gave written consent to search the Acura. Agent Vince
Garcia then found a black backpack containing several "bricks" of cocaine in the
trunk of the car. 

 Later, while speaking with Officer Bradley, appellant agreed to give a
statement to the police. He was advised of his rights before being taken to a police
station. In an interview room at the station, appellant was again advised of his rights
before beginning his statement. Appellant, a native of the Philippines whose primary
language is Tagalog, signed his initials by each waiver on a document outlining his
rights under Code of Criminal Procedure article 38.22, section 2. Officer Bradley
testified that he conversed with appellant in English, and appellant appeared to
understand his rights. Then, as appellant spoke, the officer typed what appellant said
into a computer. The officer printed appellant a copy and asked him to review it. 
Appellant, instead, asked the officer to read the statement to him, and the officer did. 
Appellant signed the written statement, which included a sentence acknowledging 
a voluntary waiver of rights. The statement describes the events of the day as
follows:

 Today, Wednesday, this guy called me on my mobile phone. The guy,
I don't know him, called me and told me he had something for me to
pick up. He told me to meet him at the motel. He told me the La Quinta
by the freeway. I called the number on my caller I.D. and go the
address. He called me three times and I think the first time was from a
Customs number. The number was 713-675-0712. I went to the motel
and met with the guy in the parking lot. The guy had a plastic bag in his
hand. The guy asked me if I could help him get rid of this and I said
what is this and he said cocaine. I was scared and I told him I would try. 
Then he told me not to tell anybody. He told me he needed $15,000 for
the cocaine. I told him I would try but I don't have the money. Then the
guy put the cocaine in my van. I left directly to the apartment. When I
got to the apartment I carried the plastic bag with the cocaine inside. 
My girlfriend asked me what I had but I told her it was nothing. We
then took our baby to her grandmother and while my girlfriend was
inside I put the cocaine in the black bag and hid it in the trunk of the car. 
My girlfriend never knew what I had or what I was doing. We went
back to the apartment and was arrested by people, who told me they
were Customs. My girlfriend didn't know anything about this I didn't
want her involved. I think Dan set me up. 

 Agent Brooks had entered the room while Officer Bradley was typing out the
statement. Agent Brooks stated that appellant appeared to understand everything that
was being said to him. Both Officer Bradley and Agent Brooks witnessed appellant
sign the written statement.

Factual Sufficiency

 In his first point of error, appellant asserts the evidence was factually
insufficient to support the jury's guilty verdict because Canoy's testimony was not
credible and appellant's written statement was obtained under "dubious" conditions. 
Our review of the factual sufficiency of the evidence requires us to ask whether a
neutral review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. King v. State, 29 S.W.3d 556, 563 (Tex. Crim. App.
2000). 

 Appellant argues that Canoy's testimony is not reliable because of his financial
interest in the case. Canoy was questioned at length about his status as a paid
informant, and the defense vigorously argued that Canoy was unreliable in closing. 
The issue of Canoy's credibility was clearly presented to the jury, and the jury is the
exclusive judge of witness credibility. Margraves v. State, 34 S.W.3d 912, 919 (Tex.
Crim. App. 2000). We must give substantial deference to the jury's determination
and avoid substituting our judgment for that of the jury. See King, 29 S.W.3d at 563. 
There is no reason to invade the provinces of the jury here. We also note that the jury
may have, in fact, discounted Canoy's testimony and found appellant guilty based on
other evidence, such as his written statement. 

 There was ample evidence from which the jury could conclude that appellant's
written statement was made voluntarily. Appellant initialed each waiver of right and
signed the statement. Two police officers testified that they were able to
communicate with appellant in English and he appeared to understand his rights. 
Appellant presented no evidence tending to show that the statement was coerced. 
Again, the jury may have actually discounted this statement and focused on other
evidence. We cannot know exactly how the jury reached its decision, but, based on
our review of the record, we can conclude the evidence was factually sufficient to
support the verdict.

 We overrule appellant's first point of error.

Entrapment

 Appellant next contends, in his second point of error, that the trial court erred
when it denied his pre-trial motion to dismiss the case pursuant to the defense of
entrapment. See Tex. Code Crim. Proc. Ann. art. 28.01 § 1(9) (Vernon 1989) 
(authorizing pre-trial motions on entrapment). "It is a defense to prosecution that the
actor engaged in the conduct charged because he was induced to do so by a law
enforcement agent using persuasion or other means likely to cause persons to commit
the offense. Conduct merely affording a person an opportunity to commit an offense
does not constitute entrapment." Tex. Pen. Code Ann. § 8.06(a) (Vernon 1994). At
a pre-trial hearing, the defendant has the burden of producing evidence to raise the
entrapment defense, and the prosecution then has the final burden of persuasion to
disprove it beyond a reasonable doubt. Bush v. State, 611 S.W.2d 428, 430 (Tex.
Crim. App. 1980) (panel opinion); Sebesta v. State, 783 S.W.2d 811, 814 (Tex.
App.--Houston [1st Dist.] 1990, pet. ref'd). 

 The entrapment defense is not available to a defendant who denies that he
committed the charged offense, as entrapment necessarily assumes that the act
charged was committed. Norman v. State, 588 S.W.2d 340, 345 (Tex. Crim. App.
1979) (panel opinion); Williams v. State, 848 S.W.2d 777, 781 (Tex. App.--Houston
[14th Dist.] 1993, no pet.). However, a defendant who pleads not guilty and who
does not take the stand or offer any testimony inconsistent with the commission of the
crime is still entitled to offer a defense of entrapment. Id.

 Here, appellant took the stand at the pre-trial hearing. He repeatedly testified
that he did not know that he had been given cocaine. Instead, he thought it was some
sort of "present," but he did not know what it was exactly. On cross-examination, he
made this clear:

 [State]: This is the last question, Mr. Abad. Did you know
that the packages that you were carrying contained
cocaine?


 [Appellant]: No.


 [State]: Are you denying--are you telling this Judge under
oath that you had no idea that the three packages that
you carried from the La Quinta over off the East
Freeway over to South Thorntree did not have--did
not contain over 400 grams of cocaine including any
adulterants and dilutants?


 [Appellant]: I do not know what is in there. I have no idea what
is in there.


 [State]: Did you think that you were breaking the law?


 [Appellant]: I am not going against the law because I don't know
what it is.


The trial court correctly denied the motion because appellant denied knowingly
possessing cocaine. See Altman v. State, 666 S.W.2d 505, 507 (Tex. App.--Eastland
1983, pet. ref'd); cf. Williams, 848 S.W.2d at 781 ("Because appellant took the stand
and denied committing the offense, he was not entitled to a jury charge on
entrapment.").

 We overrule appellant's second point of error.

Objection to the Introduction of Cocaine

 In his third point of error appellant claims the trial court erred when it admitted
the bricks of cocaine as evidence. The State introduced the cocaine during its
examination of United States Customs Agent Vince Garcia, who had discovered the
cocaine in a backpack in the trunk of the Acura. Appellant objected to the admission
on the following grounds: "There is no testimony that consent was obtained from Mr.
Abad to search the Acura. There is no testimony that anyone gave them consent to
search the Acura." The court overruled the objection and admitted the cocaine
exhibits. 

 The State argues that this objection was untimely because, prior to actually
being introduced into evidence, there was extensive testimony regarding these bricks
of cocaine. The State asserts that this is analogous to the situation in Stults v. State
where our sister court, the Fourteenth Court of Appeals, held an objection to a gun
seized from a car to be untimely. 23 S.W.3d 198, 205-206 (Tex. App.--Houston
[14th Dist.] 2000, pet. ref'd).

 To preserve error on a claim of illegal seizure, a defendant must either file a
motion to suppress or object when the evidence is offered. Roberts v. State, 545
S.W.2d 157, 158 (Tex. Crim. App. 1977); Stults, 23 S.W.3d at 205. Appellant did not
file a proper motion to suppress the cocaine. An objection should be made as soon
as the ground for objection becomes apparent. Dinkins v. State, 894 S.W.2d 330, 355
(Tex. Crim. App. 1995). Generally, this is when the item is offered into evidence. 
Stults, 23 S.W.3d at 205; see Dinkins, 894 S.W.2d at 355. However, a defendant
must also object before substantial testimony is given regarding the seized item. 
Stults, 23 S.W.3d at 205-206; Angelo v. State, 977 S.W.2d 169, 177 (Tex.
App.--Austin 1998, pet. ref'd). 

 Here, the bricks of cocaine had already been discussed by several witnesses,
without objection. Officer Bradley was shown the marked exhibits and identified
them as "the 3 kilograms of cocaine that were seized during this investigation." He
then described his role in the chain of custody. Agent Lorton was also shown the
marked exhibits and he identified them as "the same 3 kilos that were in the car." He
explained how he saw these exhibits in a backpack located in the trunk of the Acura. 
Finally, the State showed Carolyn Gamble, a chemist with the Houston Police, the
marked exhibits, and she identified them as the packages that she analyzed. Gamble's
testimony was that the exhibits tested positive for cocaine and had a combined weight
of 2.9 kilograms. 

 All of this testimony occurred before the exhibits were formally offered as
evidence during the examination of Agent Garcia. Appellant finally objected at that
point, but, as we have demonstrated, that objection came well after substantial
testimony about the cocaine bricks had already been admitted. The objection was
untimely; therefore, appellant has failed to preserve error on this point. Stults, 23
S.W.3d at 206; Angelo, 977 S.W.2d at 177. 

 We overrule appellant's third point of error.

 We affirm the judgment. 



 Michael H. Schneider

 Chief Justice



Panel consists of Chief Justice Schneider and Justices Taft and Radack. 

Do not publish. Tex. R. App. P. 47.