*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# MEMORANDUM OPINION

No. 04-08-00445-CR

Stephen Andrew **AQUINO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-3499
Honorable Raymond Angelini, Judge Presiding

Opinion by:     Steven C. Hilbig, Justice

Sitting:        Rebecca Simmons, Justice
                Steven C. Hilbig, Justice
                Marialyn Barnard, Justice

Delivered and Filed: September 23, 2009

AFFIRMED

A jury convicted Stephen Andrew Aquino of murder, and the trial court sentenced him to

sixty years confinement. On appeal, Aquino contends (1) the trial court erred in denying his request

for an accomplice-witness instruction in the jury charge, (2) the trial court erred in denying his

motion for instructed verdict, and (3) his trial counsel was ineffective. We affirm the trial court's

judgment.

**ACCOMPLICE WITNESS INSTRUCTION**

***Background***

The following facts are undisputed by the eyewitnesses, including Aquino. In January 2007, Aquino and four others – Joel Perez, Ricardo Barbosa, Kevin Bartlett, and Rosendo Dimas – spent the evening drinking at a "strip club." After the men left the club, Aquino became angry over some missing money that he intended to use to purchase a Beretta handgun. All five men left the club and went to Barbosa's house, but soon left in Aquino's truck; Aquino was driving. Aquino drove to a deserted area, and after the murder the truck became stuck, the wheels spinning until the truck was placed into four-wheel drive. Beyond this testimony, Aquino's version of events differs dramatically from that given by the other witnesses who testified at trial.

Barbosa testified that after the five men left his house they drove south on Highway 16, ending up in an open field. Barbosa got out of the truck to urinate and left his Glock handgun in the vehicle. Barbosa testified he heard "[a] gun go off." When he looked toward the back of the truck, he was surprised to see Aquino shooting at Dimas. Barbosa stated Aquino fired several shots at Dimas, including shots fired after Dimas was lying on the ground. Barbosa testified that at the time of the shooting he was able to see all of the men clearly and Aquino was the one who shot Dimas. Barbosa stated he got back into the truck. The group, less Dimas, left and Aquino dropped Barbosa at his house. Barbosa testified Aquino picked him up the next day "to go sell the gun." Barbosa stated Aquino sold a gun, which Barbosa believed was a "SKS," and Barbosa sold his Glock because he thought it was used to kill Dimas. Eventually, Barbosa was contacted by police. When he first met with police, he denied witnessing the murder, telling police that although he had been with the other men earlier in the day, he stayed home when everyone else went out. However, during a

second visit with police, and after being confronted with information in their possession, Barbosa admitted witnessing the murder and gave police a statement.

Perez, Aquino's cousin, offered testimony similar to Barbosa's. He agreed the men left Barbosa's together, and drove to an open field in south Bexar County. According to Perez, Aquino said they were going to test fire the Beretta Aquino purchased. Perez testified everyone got out of the car, and as he was getting out he heard gunshots. He saw Aquino shoot at Dimas multiple times, and heard Dimas "yelling or whatever in pain." Perez testified Aquino shot Dimas with the Glock. Perez said Aquino claimed he shot Dimas because he stole the $100. Perez stated Aquino told him to check Dimas's pockets, but he refused. Aquino then told Bartlett to do it, and he complied. When they got back into the truck, Aquino threatened them, stating that if anyone talked about what they saw they would "end up in the ditch too." Aquino also told them that if they were questioned by police they should say Dimas "left walking from Rick's house." When Aquino dropped off Barbosa, he handed the Glock to Perez and told him to "[g]ive this to Rick." Perez gave the gun to Barbosa as instructed. Later, when they were at Perez's house, Aquino told Perez not to say anything about the murder because they were family. Aquino also said that if Barbosa or Bartlett talked, he would shoot them. The next day, Aquino called to see if Perez wanted to go to the gun show with him to sell the Glock and the Beretta; Perez declined. Perez eventually contacted police because he was receiving threatening phone calls. As Barbosa, Perez lied to police when they first questioned him. Perez told police, as instructed by Aquino, that Dimas just walked away from Barbosa's house. However, he also eventually told police Aquino murdered Dimas.

Bartlett, who was friends with Dimas, admitted Dimas took the missing $100 off the truck console. Bartlett said he believed Dimas "was too intoxicated to realize what he was doing."

According to Bartlett, once the money went missing Aquino began threatening them, took the Beretta, and refused to return it. Bartlett, the owner of the Beretta, did not attempt to get the gun from Aquino. Bartlett said he was afraid for himself and Dimas. After leaving Barbosa's, the men "headed out into the county" in Aquino's truck. Bartlett claimed he was told they were going to a party. When they pulled over, Bartlett was told they were going to stop and shoot the Beretta. Everyone got out of the truck. Bartlett was the last man out, and as he was exiting he "started hearing gunshots." At first, he thought it was the gun being test fired, but as he got out he saw Dimas fall and heard him say, "You shot me." He testified he saw Dimas fall, and saw Aquino with a gun in his hand. After Dimas fell, Bartlett saw Aquino empty the clip into Dimas, saying "It's all about respect. This would have never happened if you hadn't stole my $100." Bartlett testified he was stunned and backed up between the truck's door and frame because he thought he was about to die. Bartlett said Aquino then approached him and told him to follow directions or he would "get one in the head." Aquino then instructed Bartlett to check Dimas's pulse and get "his money" out of Dimas's pocket. When Aquino was talking to Bartlett he still had the gun in his hand. Bartlett did as he was told and found a $100 bill and a $50 bill in Dimas's pockets. He gave the money to Aquino. After the men got back into the truck, Aquino told him not to say anything, which Bartlett perceived as a threat. Bartlett said he tried to remain calm, but was "scared for [his] life." Bartlett testified that when Aquino dropped him off at his house, Aquino took his driver's license. Aquino told Bartlett he took the license so that if Bartlett talked about the murder Aquino could come back to the house and kill Bartlett and his family. Just as with Barbosa and Perez, when police eventually talked to Bartlett, he initially lied, saying he went home when everyone left the club. Bartlett later

admitted he lied, but said he did so because he was scared Aquino would kill him. He eventually admitted to seeing Aquino shoot Dimas.

Aquino testified on his own behalf. He stated that when the group left Barbosa's house, Barbosa and Perez gave him directions, allegedly to the home of some women. He claimed to need directions because he was unfamiliar with the south side of San Antonio. Barbosa and Perez told him to drive south on Highway 16, but then told him he missed the turn and needed to turn around. After he made a u-turn, Barbosa and Perez told him to pull over because they needed to urinate. When he pulled off the road, everyone except Dimas got out of the truck. According to Aquino, Dimas did not immediately get out of the truck because he was "passed out." Dimas soon woke up and got out of the truck. Aquino stated that while he was using the bathroom, Bartlett and Dimas were standing together talking on one side of the truck, Barbosa and Perez were standing together and talking on the other side. Aquino testified that when he turned around to tell everyone to get back into the truck so they could leave, he saw Barbosa pull out the Glock, cock it, and hand to it Perez. He then saw Perez turn around and fire two or three rounds in the direction of Dimas and Bartlett. Aquino said Dimas's back was to Perez. After the shots were fired, Aquino saw Dimas's body turn and fall. Perez walked toward him and "fired the rest of the rounds" into Dimas. According to Aquino, he heard Barbosa tell Perez, "You know you f---- up." Aquino claimed it was Perez who told Bartlett to get the money from Dimas's pockets. Then, everyone got into the truck. Aquino claimed he had the Beretta with him at all times, and refused to give it to Barbosa when he asked for it. Aquino denied threatening anyone on the drive home. He stated Barbosa took the Glock with him when he got out of the truck. Aquino admitted taking Bartlett's driver's license, but claimed it was Perez's idea and he did it only to help Perez. Aquino said Perez instructed him on

the story he was to tell about the murder, and then he went home. Aquino admitted he lied when he told police that the last time he saw Dimas was the morning before the murder. Aquino testified Perez instructed him to tell this lie. Aquino testified he did not shoot Dimas, and his only involvement in the entire incident was taking Bartlett's license at Perez's request.

### *Analysis*

Aquino contends he was entitled to an accomplice-witness jury instruction because the evidence was sufficient to establish Bartlett, Barbosa, and Perez were accomplice witnesses.[1] He claims that by failing to give the requested instructions, the trial court committed error.

A defendant has the right to an instruction on any defensive issue raised by the evidence, "whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence." *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1287 (2007). This includes an instruction on whether a witness was an accomplice. *See id.* "An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007), *cert. denied*, 128 S.Ct. 627 (2007). A witness is not an accomplice unless his participation with the defendant involved an affirmative act that promoted the offense for which the defendant was charged. *Id.* It is not sufficient that the witness knew of the offense and failed to disclose it or even concealed it, nor is the witness's mere presence at the scene of the crime sufficient. *Id.* "In short, if the witness cannot

---

[1] A witness may be an accomplice as a matter of law or as a matter of fact. *Cocke v. Texas*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006), *cert denied*, 549 U.S. 1287 (2007). Unless the evidence clearly establishes the witness is an accomplice as a matter of law, i.e., the witness could have been prosecuted for the same offense as the principal, the question of whether the witness is an accomplice is within the province of a properly instructed jury. *Id.* at 747-48. Here, Aquino does not contend any of the witnesses were accomplices as a matter of law; rather, he contends the facts were sufficient to entitle him to have the jury decide the issue. We will address the issue as presented by Aquino.

be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law. *Id*.

A defendant may not be convicted upon the testimony of an accomplice witness unless the testimony is corroborated by independent evidence tending to connect the defendant to the crime. *Druery*, 225 S.W.3d at 498 (citing TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005)). If the evidence is conflicting on whether the witness is an accomplice, the trial court should allow the jury to decide whether the witness is an accomplice witness as a matter of fact under instructions defining the term "accomplice." *Id*. at 498-99. However, the trial court is under no obligation to give an accomplice witness instruction when the evidence establishes the witness is not an accomplice. *Cocke*, 201 S.W.2d at 748.

Aquino argues Bartlett was an accomplice, pointing to the undisputed fact that Bartlett removed $150 from Dimas's pocket after the murder, and that Perez intimated Bartlett moved the body into a ditch. He also points out that Bartlett admittedly lied to police when he was first questioned. We hold this evidence is insufficient to even raise an issue as to whether Bartlett was an accomplice as it does not indicate Bartlett performed any affirmative act to assist Aquino in the commission of the murder. Rather, the evidence even established Bartlett was not an accomplice. Bartlett testified Aquino, who was still armed, told him to do as he was told or he would be shot. Bartlett said Aquino then instructed him to check Dimas's pockets. When he removed the money from Dimas's pockets, he gave it to Aquino. Bartlett testified he lied to police because Aquino threatened him and he was scared. Perez's testimony as to Bartlett's involvement mirrored Bartlett's testimony. Aquino's testimony was similar – he merely stated it was Perez who ordered Bartlett to check Dimas's pockets. The evidence shows Bartlett was present at the murder, was instructed by

the armed shooter to remove money from Dimas's pocket, and initially concealed evidence of the murder. This evidence cannot render him an accomplice. *See Druery*, 225 S.W.3d at 498. We hold the evidence established Bartlett was not an accomplice and the trial court was therefore not required to give the requested accomplice witness as a matter of fact instruction as to Bartlett.

As for the other two witnesses – Barbosa and Perez – even if we assume Aquino's testimony raised the issue that they were accomplices, and the trial court therefore erred in refusing to so instruct the jury, we hold Aquino was not harmed by the trial court's error. When the trial court errs in refusing to give an accomplice-witness instruction, the appropriate harm analysis depends upon whether the error was preserved. *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). When, as here, the error is properly preserved, reversal is required if "some harm" is shown. *See id.* When error is not preserved, the defendant must show egregious harm. *Id*. "The difference in harm standards impact how strong the non-accomplice evidence must be for the error in omitting an accomplice witness instruction to be considered harmless." *Id*. In the "some harm" context, error is harmless if there is some non-accomplice evidence, and there is no rational and articulable basis for disregarding the non-accomplice evidence or finding it fails to connect the defendant to the offense. *Id.* at 633.

We have determined Bartlett was not an accomplice. Accordingly, his testimony is "non-accomplice evidence." Bartlett's testimony about the murder was clear and direct: he saw Aquino shoot and kill Dimas. He also testified Aquino threatened others if they talked about the murder. We can find no "rational and articulable" basis to disregard his testimony, which clearly connects Aquino to the murder. Accordingly, we hold Aquino was not harmed by the trial court's failure to give an accomplice witness instruction as to Barbosa and Perez, and we overrule Aquino's first issue.

## INSTRUCTED VERDICT

Aquino contends the trial court erred in refusing to grant his request for an instructed verdict. Aquino argues that without the testimony of the accomplice witnesses – Bartlett, Barbosa, and Perez – there was no evidence to connect him to the murder. He argues the trial court therefore was required to grant his motion for instructed verdict. However, we have already held Bartlett was not an accomplice; accordingly, his testimony did not require corroboration to support the conviction. *See Druery*, 225 S.W.3d at 498 (citing TEX. CODE CRIM. PROC. ANN. art. 38.14). Bartlett's testimony that he saw Aquino kill Dimas is sufficient to support the murder conviction under a legal sufficiency standard. *See Williams v. State*, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996) (holding issue complaining about trial court's failure to grant motion for directed verdict is treated as challenge to legal sufficiency of evidence); *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003) (holding relevant inquiry for assessing legal sufficiency is whether, after viewing evidence in light most favorable to verdict, any rational trier of fact could have found defendant guilty of crime beyond reasonable doubt). We overrule Aquino's second issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Aquino contends his trial counsel was ineffective because he failed to "investigate and follow up on all the possible defenses available" to Aquino. Specifically, Aquino claimed trial counsel did not call witnesses who would have supported his contention that Perez killed Dimas.

To succeed on an ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007). To show deficient performance, the defendant must prove by a preponderance of the

evidence that his counsel's representation fell below the standard of professional norms. *Strickland*, 466 U.S. at 688; *Garza*, 213 S.W.3d at 347-48. To demonstrate prejudice, the defendant "must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

Trial counsel is presumed to have rendered effective assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). There is a strong presumption that counsel's actions and decisions were motivated by sound trial strategy. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). When the record is silent as to counsel's strategy, a reviewing court must not simply speculate that counsel's performance was deficient. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet ref'd). If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). Counsel's performance will be sufficient if any strategic motive can be envisioned and will be considered deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is entitled to errorless or perfect counsel." *Ex Parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

At the hearing on Aquino's motion for new trial, he called five witnesses: Aquino's grandmother, his mother and father, his older brother, and his uncle. By their testimony, he attempted to show that if his trial attorney had called them to testify at the trial and located witnesses with similar stories, it would have supported his claim that Perez was the shooter, resulting in a not guilty verdict.

Most of the testimony elicited from these witnesses concerned Perez's alleged propensity for violence, specific instances of violence committed by Perez, and his access to and use of weapons. Aquino's mother said she provided counsel with the names of other persons who would have provided similar testimony, but trial counsel did not investigate. In addition to testifying about Perez's propensity for violence, the grandmother also testified her son, Perez's father, told her Perez had "killed his best friend." But she admitted he recanted this statement the next day, saying Perez did not kill anyone. The uncle stated Perez's father had asked him after the murder to help Perez get to Mexico.

First, the testimony relied upon by Aquino at the hearing on his motion for new trial would not have been admissible. Accordingly, we cannot say counsel was ineffective for failing to attempt to introduce inadmissible evidence. *See Strickland*, 466 U.S. at 688; *Garza*, 213 S.W.3d at 347-48. Aquino clearly wanted this testimony to show Perez had a propensity for violence and therefore he must have killed Dimas. Rule 404 of the Texas Rules of Evidence limits evidence of the character of a witness to those instances permitted by rules 608 and 609. TEX. R. EVID. 404(a)(3). Rule 608 permits an attack on the credibility of a witness (1) in the form of opinion or reputation evidence, but such evidence must refer to the witness's character for truthfulness or untruthfulness, and (2) by use of specific instances of conduct, but only when the witness has been convicted

-11-

of a crime as provided in rule 609. *Id.* R. 608(a)(1), (b); R. 609. Neither the witnesses nor the proffered testimony attacked Perez's character for truthfulness or untruthfulness. Nor did their testimony establish he had been convicted of a crime within the parameters of rule 609. *See id.* As for the testimony by the grandmother and uncle about what Perez's father told them, this evidence was clearly hearsay, and Aquino did not demonstrate on the record any exception that would have permitted the admission of these statements. *See* TEX. R. EVID. 801-804.

Moreover, there is nothing in the record to establish why trial counsel failed to call the five witnesses and chose not to investigate the other named by Aquino's mother. Trial counsel did not testify at the hearing in person or by affidavit, but we know from the testimony at the hearing that he was aware of the witnesses and chose not to call them at trial. We are left to speculate as to the reasoning behind counsel's actions. Given the record's silence as to the reason for counsel's inaction, we must indulge in a presumption of effectiveness and deny relief. *See Rylander*, 101 S.W.3d at 110-11.

Finally, Aquino did not establish that but for his counsel's failure to call these witnesses there was a reasonable probability the result of the proceeding would have been different. *See Mitchell*, 68 S.W.3d at 642. There were three eyewitnesses to the murder, one of whom had no relationship to anyone other than the victim, and therefore no motive to lie. His testimony was corroborated by the other two eyewitnesses.

Aquino did not prove by a preponderance of the evidence that his counsel's representation was deficient, nor did he establish that but for counsel's actions he would not have been convicted.

*See Strickland*, 466 U.S. at 688; *Garza*, 213 S.W.3d at 347-48.  Accordingly, we overrule this issue and affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish