**Affirm and Memorandum Opinion filed September 29, 2011.**



In The

# Fourteenth Court of Appeals

———————————————

## NO. 14-10-00453-CR
## NO. 14-10-00454-CR
## NO. 14-10-00455-CR

———————————————

**BRANDON MICHAEL BLACK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 09CR2591, 09CR2802 & 09CR2803**

---

## MEMORANDUM OPINION

Appellant, Brandon Michael Black, was convicted of three counts of aggravated sexual assault by a jury. The jury assessed punishment of seventy-five years' confinement per offense, which the trial court ruled would be served concurrently. Appellant brings forward one point of error on appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the aggravated sexual assault are not at issue. On April 27, 2009, fifteen year old Janet Cox[1] rode a school bus home from school. Appellant, who was then sixteen years old, also rode the school bus that day. Cox walked home and entered the home she shared with her father, who was at work. Shortly thereafter, the electricity in the home went out.

Appellant then knocked on Cox's door. Cox opened the door. Appellant stated that he was locked out of his house and asked to use a phone. Cox told him he could not use her phone because the electricity was not available. Cox's cellular phone was broken. Cox testified that appellant then pulled out a knife and walked into her home, telling her not to scream.

Appellant placed the knife at Cox's throat and took her into her bedroom, where he choked her until she told him, "Okay, okay." Appellant tore Cox's clothes off and raped her repeatedly. After he was finished, appellant put the knife to Cox's throat again and told her, "You better not tell anyone or I'll kill you." He left the house, but returned a brief time later and knocked on the door. He stated he needed his glasses and would break the glass in the front door to get them if necessary. Cox, still naked, found appellant's glasses and handed them to him through the door. Cox then dressed and went to a neighbor's home, where emergency services were summoned. When the police went to Cox's home to investigate, they discovered the house's electricity box had been torn off the outside wall.

The initial police investigation indicated appellant was Cox's assailant. The police found appellant a few hours after the attack and took him into custody. Appellant confessed to the crime shortly after being arrested. In addition, Cox underwent a forensic

---

[1] Janet Cox is a pseudonym created by the League City Police Department for the victim.

examination and appellant's DNA was found on her body. Cox also identified appellant from a lineup.

The jury found appellant guilty of all three charges of aggravated sexual assault and was charged with determining punishment.

During the punishment phase of the trial, appellant called three witnesses to testify. The first was Jonathan Grigg, an unrelated adult who lived with appellant, his mother, and siblings. Grigg testified appellant had mental health concerns, took medicine for attention deficient disorder, and attended counseling sessions. Grigg also stated he had concerns about appellant's "mental stability" and described certain incidents that he believed showed appellant had mental health problems.

Appellant's mother also testified. She explained appellant had a long history of inappropriate behavior. She stated that she started trying to get appellant to see a mental health professional when he was three and a half and "kept getting into matches and knives." She explained that no therapist would see appellant at that age because they claimed he was too young. His mother contends that throughout appellant's life, she had attempted to procure mental health services for her son but was unable to find someone willing to work with him.

When appellant was twelve years old, his mother committed him to a psychiatric hospital because he set fire to an apartment building. She also testified that appellant had been abusive to animals and his younger siblings. Appellant was discharged from the hospital after a month of in-patient care. According to his mother, the hospital referred appellant to a psychiatrist who did not provide counseling but did prescribe medication for bipolar disorder.

Trial counsel also called Dr. Robert Harper. Dr. Harper, a psychologist, specializes in neuropsychology and met with appellant for approximately four hours. Dr. Harper testified that he believed that appellant suffers from attention deficit disorder and

3

Asperger's syndrome. He also explained that he believed appellant was incorrectly diagnosed with bipolar disorder. Dr. Harper stated he did not believe appellant was a high risk for recidivism and that appellant should receive therapy to treat his Asperger's syndrome.

Dr. Harper became involved in appellant's case because Dr. Victor Scarano consulted with him about appellant's defense. According to Dr. Harper, Dr. Scarano provided "general background" about appellant before Dr. Harper tested him. Dr. Harper also testified that his findings were "consistent" with Dr. Scarano's belief that appellant suffers from Asperger's syndrome. Dr. Harper's findings were based, at least in part, on Dr. Scarano's "extensive evaluation of [appellant], his history and his visits with him and his general understanding of a wide variety of psychiatric conditions." Dr. Scarano did not testify, and no reports or affidavits from him were submitted into evidence.

The jury sentenced appellant to seventy-five years' confinement for each offense. The sentences are to run concurrently.

## ANALYSIS

Appellant contends he received ineffective assistance of counsel because his trial counsel failed to perform adequate investigation of his mental health history.

### A. Standard of Review

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Salinas v. State,* 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient to the point it fell below standards of prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would be different. *Id.* A reasonable probability is a probability sufficient to

4

undermine confidence in the outcome. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

An accused is entitled to reasonably effective assistance of counsel. *King v. State,* 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). There is a strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption of reasonably professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson,* 9 S.W.3d at 813. When determining the validity of an ineffective assistance of counsel claim, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingraham v. State,* 679 S.W.2d 503, 509 (Tex. Crim. App. 1984). When the record is silent as to the reasons for counsel's conduct, as in this case, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Stults,* 23 S.W.3d at 208. Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

A criminal defense attorney has a duty to make an independent investigation of the facts of a case, which includes seeking out and interviewing potential witnesses. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). A breach of the duty to investigate may result in a finding of ineffective assistance "where the result is that any viable defense available to the accused is not advanced." *Ex parte Ybarra*, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982). In defining the duty to investigate, the United States Supreme Court has stated that "counsel has a duty to make reasonable investigations or to

5

make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland,* 466 U.S. at 691.

## B. Discussion

Appellant did not file a motion for new trial, did not obtain an affidavit from trial counsel and did not request a post conviction hearing regarding counsel's performance.

Appellant contends his trial counsel was ineffective because she did not subpoena the medical records or testimony of Dr. Scarano, which he believes shows she failed to conduct an appropriate investigation into appellant's mental condition.

Appellant argues his trial counsel's performance fell below objective standards of professionalism because Dr. Scarano could have provided insight into appellant's "lengthy history of behavior problems, emotional issues, and instances of sexual abuse."

We indulge a strong presumption that counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Stults*, 23 S.W.3d at 208. When the record is silent as to the reasons for counsel's conduct, as in this case, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Stults,* 23 S.W.3d at 208. It is possible that defense counsel did not believe Dr. Scarano would make a compelling witness. Trial counsel could have also determined that Dr. Harper and the other witnesses gave all the relevant information to the jury and Dr. Scarano's records or testimony would have been unnecessarily repetitive. Without appellant's trial counsel's affidavit or testimony, it is impossible for this court to know her reasons. As a result, we conclude that appellant has not proven that his trial counsel's assistance was below professional norms.

Appellant has failed to prove the first prong of the test to show ineffective assistance of counsel. *See Salinas,* 163 S.W.3d at 740 (citing *Strickland,* 466 U.S. at 687). As a

6

result, it is unnecessary for us to consider appellant's arguments regarding the second prong. Tex. R. App. P. 47.1. We overrule appellant's only point of error.

## CONCLUSION

We overrule appellant's sole point of error and affirm the trial court's judgment.

/s/     John S. Anderson
        Justice

Panel consists of Justices Anderson, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).