Affirmed and Memorandum Opinion filed August 21, 2007








Affirmed and Memorandum Opinion filed August 21, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00690-CR

____________

 

JOHN NAMY KHANJANI, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 178th
District Court

Harris County, Texas

Trial Court Cause No. 1056902

 



 

M E M O R A N D U M   O P I N I O N

Appellant, John Namy Khanjani, was found guilty by a jury
of aggravated assault.  The trial court assessed punishment at fourteen years= confinement in
the Texas Department of Criminal Justice, Institutional Division.  In three
issues, appellant argues he should be granted a new trial because the State
failed to disclose allegedly exculpatory evidence, the State presented false
testimony at trial, and appellant received ineffective assistance of counsel. 
We affirm.








Factual and Procedural Background

Complainant, Salem Tannous, was the owner and operator of
Smoke Heaven, a business located on Hillcroft Street in Houston.  Smoke Heaven
sold smoking accessories, tobacco, and a variety of other products.  The
complainant=s cousin, Raad, was an employee of Smoke Heaven. 
Appellant and his girlfriend, Laura Wyche, lived in Southwest Houston and
visited Smoke Heaven on numerous occasions during the summer of 2005.  

Sometime during July of 2005, appellant and Wyche visited
Smoke Heaven and Wyche inquired about getting a job there.  Raad began flirting
with Wyche and asked her for her telephone number.  Wyche told appellant that
Raad made her uncomfortable, and appellant became angry.  Thereafter, Wyche and
appellant had an argument in front of Smoke Haven.  The complainant intervened
and threatened to call the police.  

At approximately 11:50 p.m. on August 7, 2005, appellant
entered Smoke Heaven carrying a pistol and wearing a mask.  Appellant ran to
the back of the store and confronted the complainant.  Appellant grabbed the
complainant and stated, AYou guys, motherf-----, you f---ing with
my girlfriend.@  The two men struggled and appellant shot the
complainant three times.  When appellant attempted to flee, the complainant
chased appellant and tackled him inside the store.  Surveillance video from
Smoke Heaven, which was admitted into evidence at trial, shows that the
complainant removed, or partially removed, appellant=s mask during the
struggle.  

Appellant was indicted for aggravated robbery and pleaded Anot guilty.@  The jury found appellant
guilty of the lesser offense of aggravated assault, and the trial court
sentenced appellant to fourteen years= confinement. 
Appellant filed a motion for new trial, which was denied.  This appeal
followed.








Discussion

I.
Standard of Review

All of the issues raised in this appeal were asserted by
appellant in his motion for new trial.  We review a trial court=s denial of a
motion for new trial under an abuse-of-discretion standard.  Holden v. State,
201 S.W.3d 761, 763 (Tex. Crim. App. 2006).  A trial court abuses its
discretion in denying a motion for new trial only when no reasonable view of
the record could support the trial court=s ruling.  Id.

II.
The State Did Not Present False Testimony At Trial

In his second issue, appellant argues the State violated
his right to due process by presenting false testimony at trial.  Appellant
contends the State presented Wyche=s false testimony
that she was at work at the time of the offense and could not have been with
appellant.  The State argues, and we agree, that appellant has failed to
satisfy his burden of establishing that Wyche=s testimony was
false.

The knowing use of false testimony by the State requires
reversal when there is a reasonable likelihood that the false testimony could
have affected the judgment of the jury. Ramirez v. State, 96 S.W.3d 386,
396 (Tex. App.CAustin 2002, pet. ref=d).  Initially,
the defendant must show that the testimony at issue is sufficiently false and
misleading to give the trier of fact a false impression. Id. at 394B95.  Here,
appellant contends Wyche=s trial testimony regarding her
whereabouts at the time of the offense is false because it conflicts with her
grand jury testimony and additional evidence introduced at the hearing on
appellant=s motion for new trial.  








Before the grand jury, Wyche testified she typically worked
on Sunday nights, but was uncertain whether she worked on Sunday August 7,
2005, the night of the offense.  Regarding her whereabouts on the night of the
offense, Wyche testified, AI don=t know.  Most
likely I was at work B I mean B I can find out
for sure, you know, and I have to talk to my boss though.@  Wyche testified
she worked at Great Caruso, and sometimes appellant came to her place of work
and watched the show.  When asked if appellant was at Great Caruso on the night
of the offense, Wyche testified, AI don=t know if he was B I mean, it B I mean, it=s a possibility.@ 

At appellant=s trial, Wyche
gave the following testimony regarding her whereabouts at the time of the
offense:

[State=s counsel]:    On that night that
the robbery took place, on August 7th, were you with the defendant, John
Khanjani?     

[Wyche]:               No, sir.

[State=s counsel]:    So, you cannot be an
alibi witness for him; you do not know where he was, right?

[Wyche]:               Correct.

[State=s counsel]:    Were you typically
with him on most nights during that period?

[Wyche]:               Um, well,
yeah.  Yes, I guess you could say that, because I worked late. 

[State=s counsel]:    Where were you
working at that time?

[Wyche]:               Great
Caruso. 

[State=s counsel]:    Isn=t it fair to say also that a lot of
these things are cloudy for you because it was an uncomfortable period in your
life?

[Wyche]:               Yes, sir. 

At the hearing on his motion for new trial, appellant
introduced into evidence Wyche=s timecard from Great Caruso.  The
timecard indicates that Wyche worked from 4:41 p.m. to 8:51 p.m. on August 7,
2005.  








Based on the evidence described above, appellant claims the
State presented Wyche=s Afalse testimony
that appellant could not have been with her at the time of the offense because
she was at work at the Great Caruso.@  The record does
not support appellant=s contention.  First, Wyche did not
explicitly testify at trial that she was working on August 7 at the time the
offense occurred.  Taken in context, Wyche=s trial testimony
is ambiguous and could be interpreted as meaning (1) she was employed by Great
Caruso on the date of the offense, (2) she was employed by Great Caruso Aduring that
period,@ or (3) she was
physically present at work on the date of the offense.  Moreover, Wyche=s grand jury
testimony regarding her whereabouts on the night of the offense does not
necessarily conflict with her testimony at trial.  Wyche testified before the
grand jury that she did not recall whether she was working on the night of the
offense, and it was Aa possibility@ that appellant
was at the Great Caruso that evening. 

In support of his argument, appellant cites Yates v.
State, 171 S.W.3d 215 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d). In Yates, an expert witness
gave false testimony regarding the existence of a television show having a plot
similar to the acts of a criminal defendant. Id. at 221.  After the jury
returned a guilty verdict, the expert witness acknowledged that his testimony
was factually incorrect, and the parties stipulated that no such television
show was ever produced.  Id. at 219B20.  Unlike the
defendant in Yates, appellant has failed to establish that the State
presented false testimony at trial.  See id; see also Ramirez, 96
S.W.3d at 395 (finding alleged victim falsely testified she was not looking for
money and had not entered into a contract Ato get money@ where evidence
showed the alleged victim had a written contract with an attorney to bring a
civil lawsuit seeking damages).  Accordingly, appellant=s second issue is
overruled.

III.
The State Did Not Suppress Exculpatory Evidence








In his first issue, appellant argues the State=s failure to
disclose the grand jury testimony of Laura Wyche denied appellant due process
of law and a fair trial.  In his motion for new trial and appellate brief,
appellant claims Wyche=s grand jury testimony is exculpatory
because it is inconsistent with her testimony at trial and, therefore, could
have been used for impeachment.  Prior to trial, appellant=s trial counsel
requested that the prosecutor permit him to read Wyche=s grand jury
testimony, and the prosecutor refused.  

Citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct.
1194, 10 L.Ed.2d 215 (1963), appellant argues the State=s failure to
disclose Wyche=s grand jury testimony violated his right to due
process.  In Brady v. Maryland, the Supreme Court held that the
suppression by the prosecution of evidence favorable to an accused violates due
process, irrespective of the good faith or bad faith of the prosecution.  Id.,
373 U.S. at 87, 83 S.Ct. at 1196B97.  To
demonstrate reversible error for violation of Brady rights, a defendant
must show (1) the State failed to disclose evidence, regardless of the
prosecutor=s good faith or bad faith; (2) the withheld evidence
is favorable to the defendant; and (3) the withheld evidence is material, that
is, there is a reasonable probability that had the evidence been disclosed, the
outcome of the trial would have been different. Strickler v. Greene, 527
U.S. 263, 281B82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); Harm
v. State, 183 S.W.3d 403, 406 ((Tex. Crim. App. 2006).

In this case, appellant has failed to satisfy the third
prong of the Brady test.  Appellant argues that Wyche=s grand jury
testimony is material because it could have been used to impeach her trial
testimony that appellant looked like the assailant depicted in the surveillance
video.  Wyche testified at trial that the individual depicted in State=s Exhibit 21, a
still photograph extracted from the surveillance video, Alooks like@ appellant.  In
her grand jury testimony, Wyche testified that she watched the surveillance
video once and the video was blurry.  When asked if the individual depicted in
the video resembled appellant, Wyche testified, AI feel bad saying
yes or no because the video was so blurry.  I didn=t get a good look.@  Wyche also
testified to the grand jury that the individual depicted in the surveillance video
appeared to be a different height and weight than appellant and had a different
hair line.  In her trial testimony, Wyche acknowledged that she had given
conflicting statements and would like to change portions of her grand jury
testimony.








Our review of the record shows that Wyche never positively
identified appellant as the assailant.  Rather, Wyche testified that the
individual shown in State=s Exhibit 21 Alooks like@ appellant.  The
jury could have made the same determination based on their comparison of the
photographic evidence to the appellant at trial.  The surveillance video from
Smoke Heaven was admitted into evidence and published to the jury, and
appellant was present in the courtroom during trial.  Further, the complainant
testified at trial and positively identified appellant as the man who assaulted
him.  

Appellant further argues that Wyche=s grand jury
testimony is material under the third prong of Brady because of
inconsistencies between her grand jury testimony and trial testimony regarding
a prior altercation she had with appellant in front of Smoke Haven, and whether
appellant purchased a body cleanser (detoxification) product from Smoke
Heaven.        Although the grand jury testimony of Wyche may have aided
appellant in impeaching Wyche=s testimony at trial, the mere possibility
that an item of undisclosed information might have helped the defense, or might
have affected the outcome of the trial, does not establish materiality in the
constitutional sense. Hampton v. State, 86 S.W.3d 603, 612B13 (Tex. Crim.
App. 2002).  To establish materiality under the third prong of Brady,
appellant bears the burden of showing that, in light of all the evidence, it is
reasonably probable that the outcome of the trial would have been different had
the prosecutor made a timely disclosure. Id.  Based on our review of
Wyche=s grand jury
testimony and testimony at trial, we hold appellant has failed to meet his
burden under the third prong of Brady.  Accordingly, appellant=s first issue is
overruled. 

 IV.
Appellant Did Not Receive Ineffective Assistance of Counsel








In his third issue, appellant contends he received
ineffective assistance of counsel at trial.  In reviewing claims of ineffective
assistance of counsel, we apply a two-prong test.  See Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Strickland v. Washington,
466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  To establish
ineffective assistance of counsel, appellant must prove by a preponderance of
the evidence that (1) his trial counsel=s representation
was deficient in that it fell below the standard of prevailing professional
norms, and (2) there is a reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different. Id.  A reasonable
probability is a probability sufficient to undermine confidence in the outcome. 
Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).   

When evaluating a claim of ineffective assistance, the
appellate court looks to the totality of the representation and the particular
circumstances of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  There is a strong presumption that counsel=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  Salinas, 163 S.W.3d at 740; Stults v. State, 23 S.W.3d
198, 208 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  To overcome
the presumption of reasonable professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@ Thompson,
9 S.W.3d at 813.  When the record is silent as to the reasons for counsel=s conduct, a
finding that counsel was ineffective would require impermissible speculation by
the appellate court. Stults, 23 S.W.3d at 208. Absent specific
explanations for counsel=s decisions, a record on direct appeal
will rarely contain sufficient information to evaluate an ineffective
assistance claim.  Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). 








Appellant makes two
arguments in support of his claim of ineffective assistance of counsel.  First,
appellant argues his trial counsel rendered ineffective assistance by failing
to impeach Wyche with her grand jury testimony and timecard from work.  Appellant
claims his trial counsel should have obtained this evidence and used it to
impeach Wyche=s testimony at trial regarding her
identification of appellant as the individual depicted in the surveillance
video, Wyche=s whereabouts at the time of the
offense, a prior altercation between Wyche and appellant, and appellant=s purchase of a body cleanser
(detoxification) product from Smoke Heaven.  In an affidavit attached to
appellant=s motion for new trial, appellant=s trial counsel testified that had
the State disclosed Wyche=s grand jury testimony, he would
have used it to impeach Wyche=s testimony at trial.  

In his second argument, appellant claims his trial counsel
rendered ineffective assistance by failing to object  to two questions asked by
the prosecutor to Detective Colleen Guidry, a witness for the State.  Guidry
testified she placed appellant=s driver=s license
photograph in a photospread and showed it to the complainant, who immediately
identified appellant as the assailant.  The prosecutor asked, ADid you believe
him?@  Guidry
responded, AYes.@  The prosecutor then asked Guidry to
explain the facts and circumstances corroborating the complainant=s identification
of appellant.  Guidry responded that appellant was linked to the crime by
evidence that he and Wyche had previously been in Smoke Heaven, Wyche
complained to appellant about a problem with the complainant=s cousin, and
appellant had thick eyebrows and a receding hair line like the individual
depicted in the surveillance video.  Appellant=s trial counsel
did not object.  Appellant=s second claim of ineffective assistance
was not developed in his motion for new trial.

Assuming without deciding that appellant=s trial counsel=s performance was
deficient, appellant has failed to show a reasonable probability that, but for
his counsel=s deficient performance, the result of the trial would
have been different.  See Mallett, 65 S.W.3d at 62B63.  As discussed
in our analysis of appellant=s first and second issues, the impeachment
value of Wyche=s grand jury testimony, if any, is not substantial.  








The complainant testified he had seen appellant in Smoke
Heaven on prior occasions and was certain that appellant was the individual who
assaulted him.  The surveillance video and still photographs from Smoke Heaven
corroborated the complainant=s testimony and provided independent
evidence from which the jury could identify appellant as the assailant. The
jury heard testimony that appellant was aware that the complainant=s cousin had recently
flirted with Wyche and asked her for her telephone number.  The jury also heard
the complainant=s testimony that during the assault, the
assailant stated, AYou guys . . . you fCing with my
girlfriend.@ 

Based on our review of the record as a whole, we find that
appellant has failed to show a reasonable probability that but for the alleged
deficiencies of his trial counsel, the result of the trial would have been
different.  Appellant=s third issue is overruled.

Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 21, 2007.

Panel consists of
Justices Anderson, Fowler, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).