Affirmed and Memorandum Opinion filed November 6, 2007








Affirmed and Memorandum Opinion filed November 6, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00637-CR

____________

 

MANUEL RICHARD PENA, Appellant

 

V.

 

STATE OF TEXAS, Appellee

 



 

On Appeal from the 338th
District Court

Harris County, Texas

Trial Court Cause No. 1013084

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Manuel Richard Pena, appeals his conviction for
the felony offense of injury to a child. 
Tex. Penal Code Ann. ' 22.04 (Vernon 2003).  We affirm. 

Factual and Procedural Background








On October 5, 2004, the complainant, appellant=s seven year-old
grandson, E.P., was living with appellant and appellant=s wife.  That
morning, in a break from the normal routine, appellant, rather than his wife,
entered E.P.=s bedroom to wake E.P. so he could get ready for
school.  After waking E.P., appellant left the room for a few minutes and when
he returned, E.P. was still in bed.  Appellant told E.P. to hurry up and get
dressed.  E.P. then told appellant to hold up, making appellant mad.  E.P. then
testified that at that point, appellant dragged him out of his bed and onto the
floor.  Appellant then told E.P. to stand up, which he did.  According to E.P.,
appellant then hit him with his left hand, giving him a bloody nose.  E.P.
testified he then fell back to the floor whereupon appellant kicked him twice,
once in the eye and once in the stomach.  Appellant then helped E.P. up and
wiped off his nose.  According to E.P., he covered his face on the school bus
and as a result, no one noticed his bloody nose and eye until he arrived at
school.  E.P. testified he did not inflict his injuries on himself.  Finally,
on cross-examination, E.P. admitted to having previously made false accusations
of physical harm against an adult.

After E.P. arrived at school, school officials contacted
the police and paramedics.  Deputy Constable Steven Romero, who was assigned to
the Cy-Fair School District, responded to the call.  Deputy Romero testified he
interviewed E.P., who told him the injuries had occurred that morning before
school.  Deputy Romero also testified that he observed that EP had a black eye
and dried blood around his nose.  Finally, Deputy Romero testified the eye
injury was fresh.

Deputy Constable Ed Martinez also testified.  Deputy
Martinez testified he is also assigned to the Cy-Fair School District and he
was called to the scene because he is a crime scene photographer.  Deputy
Martinez testified he observed that E.P. had a black eye and had dried blood
coming from his nose.  The photographs taken that morning by Deputy Martinez
were then introduced into evidence.  They show that E.P. had a black right eye,
blood coming out of his right nostril, a small knot on his forehead and a
bruised area close to E.P.=s elbow.  Finally, Deputy Martinez stated
the injuries appeared to be fresh.








E.P.=s older sister also testified.  E.P.=s sister was nine
at the time of the events at issue in this appeal.  Initially E.P.=s sister testified
that she saw appellant kick E.P. in the eye.  However, on cross-examination,
she stated that, on the day of the incident, she told the school authorities
that she could not see what happened because she was in the bathroom.  Finally,
on re-direct examination, E.P.=s sister admitted she did not see
appellant kick E.P. that morning.

Paramedic Joe Kiff was the last witness called by the
State.  Kiff testified he examined E.P. that morning at school.  Kiff confirmed
the previously mentioned injuries and that they appeared to be very fresh.

Appellant called two witnesses during his portion of the
trial.  The first was his wife, Marty Pena.  Ms. Pena testified she observed
appellant pick E.P. up out of bed by his pajamas and she saw E.P. do a flip and
hit his face on the floor.  According to Ms. Pena, appellant then picked E.P.
up off the floor and told him to get dressed and that appellant then left E.P.=s room.  Ms. Pena
also stated that she heard appellant re-enter E.P.=s room and once
again tell him to get dressed.  However, she testified that she later saw E.P.
still sitting on the edge of his bed and that he was not dressed, so she went
into his room and helped E.P. get dressed for school.  Ms. Pena said she saw a
red mark under E.P.=s eye, but she denied that he had any
blood on his nose.  Ms. Pena also testified that appellant, because he was
concerned about the red mark, took a picture of E.P. before E.P. left for
school.  That photograph was introduced into evidence and it shows E.P. with
only a small mark under his right eye.








Appellant was the final witness in the trial.  Appellant
testified he went into E.P.=s room to wake him up that morning. 
According to appellant, he woke E.P. up, E.P. got up out of bed and was
standing beside his bed.  Thinking E.P. was now awake and moving, appellant
left E.P.=s room.  Appellant returned a few minutes later and
discovered E.P. had gotten back in bed.  Appellant testified that, at that
point, he picked E.P. up, sat him on the edge of his bed and took his shirt off
and, according to appellant E.P. then Acopped an
attitude.@  Once again appellant left E.P.=s room and
returned a short time later to find E.P. had put his shirt back on and gotten
back in bed.  Appellant testified that, using one hand, he grabbed E.P. by his
pajama bottoms and picked him up.  According to appellant, E.P. then did a
somersault and he hit the floor.  Appellant said that after E.P. hit the floor,
he then picked E.P. up and told him to get dressed.  Appellant denied that he
kicked E.P. or hit him with his hand.  Appellant testified he then decided the
best thing for him to do at that stage was to leave and let his wife take over
getting E.P. ready for school.

Appellant stated that once he noticed the mark on E.P.=s face, he took a
photo of E.P. because of his son.  Appellant=s only explanation
for why he took this picture was because his son Ais not a very nice
guy to put it mildly.@  Appellant testified that, as was their
normal routine, he walked E.P. to the bus stop that morning.  According to
appellant, E.P. did not have a bloody nose on the way to the bus stop and,
except for the mark under his eye, E.P. did not appear to have other injuries. 
Finally, appellant testified that E.P. had caused injuries to himself in the
past and that he had sometimes been scratched by the family=s pet cat.

The jury found appellant guilty.  The trial court assessed
punishment at six years= confinement in the Institutional Division
of the Texas Department of Criminal Justice, probated for a term of six years,
and a $1,000 fine.  Following the pronouncement of his sentence, appellant
filed a motion for new trial alleging, among other things, that he had received
ineffective assistance of counsel at trial.  Specifically, appellant alleged
his trial counsel, Logan Dietz, failed to interview witnesses, failed to
subpoena witnesses, and failed to prepare for trial.  The trial court held a
hearing during which both appellant and Mr. Dietz  testified.








During the hearing, appellant testified he provided Mr.
Dietz with the names and contact information for twelve potential defense
witnesses.  On cross-examination, appellant admitted the witnesses on his list
were character witnesses for the complainant and that none were present in the
house on the day of the incident.  Appellant also admitted his defense theory
was that E.P. was injured, but that he sustained those injuries as the result
of an accident.

Mr. Dietz testified regarding his representation of
appellant.  Initially, Mr. Dietz testified that he knew E.P. had been under the
treatment of out-of-state psychiatrists and that he obtained a court order for
the release of E.P.=s medical records.  Mr. Dietz also stated
he paid for copies of E.P.=s medical records and reviewed the records
once he received them from the clinic.  According to Mr. Dietz, the records
indicated that in 2002, E.P. was prescribed (1) Seroquel, which is often
prescribed in the treatment of schizophrenia; (2) Zoloft; and (3) Strattera,
which is often prescribed in the treatment of ADHD and obsessive/compulsive
disorders.  Mr. Dietz testified that he attempted to speak with E.P.=s treating
physicians at an out-of-state clinic, but they were not willing to talk on the
telephone.  In addition, Mr. Dietz stated he initiated an effort to retain a
medical expert to review E.P.=s records in order to testify regarding
E.P. during the trial.   Mr. Dietz testified he decided not to pursue retaining
the expert because it appeared the testimony would not be admissible.  Mr.
Dietz also admitted the medical records would have been helpful to his defense
of appellant.  Mr. Dietz testified that, because the trial court had granted
the State=s motion in limine regarding the medical records, he
did not attempt to question E.P. regarding the records or seek to have them
admitted into evidence. 

Regarding his other efforts at preparing for appellant=s trial, Mr. Dietz
testified that he met with appellant between six and eight times to prepare for
his trial.  In addition, Mr. Dietz reviewed the State=s file on
appellant=s case on a number of occasions.  Mr. Dietz admitted
he did not attempt to speak with any of the investigating officers.  He also
testified that he attempted, unsuccessfully, to speak with E.P., who was living
out of state, but that he was able to speak with E.P.=s grandmother on
two occasions.  Mr. Dietz admitted he did not hire an investigator or visit the
crime scene.  He also testified that he did not attempt to obtain the CPS
records regarding E.P., but he did see some CPS records in the State=s file.








With regard to appellant=s list of
potential witnesses, Mr. Dietz testified he did not attempt to contact any of
the persons on the list, but instead, he gave appellant the option of (1)
hiring an investigator to interview the potential witnesses and obtain
statements; (2) bringing the potential witnesses to his office where he could
interview them and determine if any of them had information relevant to the
trial; or (3) talk to the witnesses himself and write down what they had to say
and they would call any witness with pertinent information.  According to Mr.
Dietz, appellant did not do any of these.  In Mr. Dietz=s opinion, the
testimony of many of the potential witnesses would not have been admissible
because their testimony concerned specific acts of misconduct by E.P.  With
regard to the CPS investigator on the list, Mr. Dietz testified that, in his
experience, they do not discuss specific cases over the phone and he did not
contact her for that reason.  Mr. Dietz also testified that once the trial was
underway, the trial court had already determined that most of the testimony
that the majority of the witnesses could have offered was not relevant and
would not have been admitted into evidence.  Mr. Dietz stated he told appellant
to bring any potential witnesses who might give pertinent testimony and
appellant did not bring any witnesses.  Mr. Dietz also testified that, if the
potential witnesses were not willing to appear voluntarily and they had to be
subpoenaed, in his experience, their testimony would not be helpful to
appellant.  Finally, Mr. Dietz testified  that he informed appellant of that
opinion.

When asked if his defensive theory would have changed had
he known that some of appellant=s potential witnesses could testify
concerning E.P.=s violent character and the false
allegation E.P. made against another family member, Mr. Dietz replied it would
not have for several reasons.  First, Mr. Dietz testified that he already knew
of E.P.=s violent nature
and prior false accusations.  Second, appellant=s defensive theory
was one of accident, not self-defense, as accident was in line with appellant=s prior statements
to investigators.  Finally, according to Mr. Dietz, E.P.=s medical records
indicated that E.P. was violent when he was four years old and that complainant
was seven at the time of the incident.








The trial court denied appellant=s motion for new
trial and this appeal followed.

Discussion

In three issues, appellant challenges his conviction, arguing
that (1) he was denied effective assistance of counsel, (2) the trial court
abused its discretion when it denied appellant=s motion for new
trial based upon ineffective assistance of counsel, and (3) the evidence was
factually insufficient to sustain a finding of guilt beyond a reasonable doubt.
We address his third issue first, challenging the factual sufficiency of the
evidence.

A.      Is the
Evidence Factually Sufficient to Support Appellant=s Conviction?

In his third issue, appellant argues the evidence is
factually insufficient to support the jury=s guilty verdict.[1] 
The evidence may be
factually insufficient in two ways.  Prible v. State, 175 S.W.3d 724,
730B31 (Tex. Crim. App. 2005).  First,
when considered by itself, evidence supporting the verdict may be so weak the
verdict is clearly wrong and manifestly unjust.  Id.  Second, where the
evidence both supports and contradicts the verdict, the contrary evidence may
be strong enough that the beyond-a-reasonable-doubt standard could not have
been met.  Id.  Appellant contends the evidence in this case, specifically
E.P.=s testimony, is
too weak to sustain a finding of guilt beyond a reasonable doubt.  In support
of that contention, appellant argues the following evidence undermined E.P.=s credibility: (1)
E.P. was taking four separate medications at the time of the incident; (2) E.P.
had previously harmed himself; and (3) E.P. did not always tell the truth.

 

 








1.       The
Standard of Review

In a
factual sufficiency review, we consider all the evidence in a neutral light.  Id. 
Our
evaluation of that evidence should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony. Cain
v. State, 958 S.W.2d 404, 408B09 (Tex. Crim.
App. 1997).  The jury may
believe or disbelieve all or part of any witness=s testimony. Jones
v. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  Reconciliation of
any conflicts in the evidence falls within the exclusive province of the jury. Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).  Finally, our analysis must consider
the evidence appellant claims is most important in allegedly undermining the
jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

2.         The Evidence is Factually
Sufficient








In this case appellant was charged with the felony offense
of injury to a child.  A person commits this offense if he intentionally causes
either serious bodily injury or bodily injury to a child 14 years of age or
younger.  Tex. Penal Code Ann. ' 22.04(a).  Appellant=s contention that
E.P.=s testimony is too
weak to sustain a finding of guilt beyond a reasonable doubt is without merit. 
Here, E.P. testified that appellant hit him in the face giving him a bloody
nose, and kicked him twice, once in the stomach and once in the face.  This
testimony is factually sufficient evidence to establish each of the elements of
the offense.  Davis v. State, 831 S.W.2d 839, 842 (Tex. App.CDallas 1992, pet.
ref=d) (holding that
the testimony of a single witness is factually sufficient to support a
conviction).  In addition, the jury heard the testimony regarding E.P.=s medication, as
well as the allegations that he had previously harmed himself and did not
always tell the truth.  The jury heard all the evidence, including the evidence
cited by appellant, and still accepted E.P.=s version of the
events and rejected appellant=s.  The jury is the exclusive judge of the
credibility of the witnesses and the weight to be given their testimony.  Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  The jury=s decision is not manifestly unjust
merely because the jury resolved conflicting views of the evidence in favor of
the State.  Cain, 958 S.W.2d at 410.  The jury was free to reject all of the
defensive evidence if it so chose.  Davis, 831 S.W.2d at 842. 
Therefore, the fact that the jury did so here does not render the evidence
factually insufficient.  We overrule appellant=s third issue.

B.      Did
Appellant Receive Ineffective Assistance of Counsel?

In his first and second issues, appellant contends his
trial counsel was ineffective and the trial court abused its discretion when it
denied his motion for new trial based on ineffective assistance of counsel.  In
this appeal, appellant contends he received ineffective assistance of counsel
because of his trial counsel=s alleged failure to investigate the facts
and circumstances surrounding the incident at issue in this appeal.  According
to appellant, trial counsel=s failures include: (1) not contacting the
CPS investigator or subpoenaing the CPS records relating to the incident; (2)
not retaining an expert to review E.P.=s medical records
and not attempting to introduce those medical records into evidence; (3) not
investigating nor presenting evidence regarding the effects of the medications
E.P. was taking at the time of the incident; (4) not speaking to any of E.P.=s treating
physicians and failing to subpoena those doctors to testify; (5) not going to
the scene and not interviewing the investigating officers; (6) not retaining an
investigator; (7) not investigating E.P.=s character; and
(8) not investigating the twelve potential witnesses brought to his attention
by appellant.

1.       The
Standard of Review








In reviewing claims of ineffective assistance of counsel,
we apply a two-prong test.  See Salinas v. State, 163 S.W.3d 734, 740
(Tex. Crim. App. 2005) (citing Strickland v. Washington, 466 U.S. 668,
687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  To establish ineffective
assistance of counsel, appellant must prove by a preponderance of the evidence
that (1) his trial counsel=s representation was deficient in that it
fell below the standard of prevailing professional norms, and (2) there is a
reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different. Id.  A reasonable
probability is a probability sufficient to undermine confidence in the outcome. 
Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).   

An accused is entitled to reasonably effective assistance
of counsel.  King v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). 
When evaluating a claim of ineffective assistance, the appellate court looks to
the totality of the representation and the particular circumstances of each
case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
There is a strong presumption that counsel=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  Salinas, 163 S.W.3d at 740; Stults v. State, 23 S.W.3d
198, 208 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  To overcome
the presumption of reasonable professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@ Thompson,
9 S.W.3d at 814.  When determining the validity of an ineffective assistance of
counsel claim, any judicial review must be highly deferential to trial counsel
and avoid the deleterious effects of hindsight.  Ingham v. State, 679
S.W.2d 503, 509 (Tex. Crim. App. 1984).  When the record is silent as to the
reasons for counsel=s conduct, a finding that counsel was
ineffective would require impermissible speculation by the appellate court. Stults,
23 S.W.3d at 208. Absent specific explanations for counsel=s decisions, a
record on direct appeal will rarely contain sufficient information to evaluate
an ineffective assistance claim.  Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).








We review the denial of a motion for new trial for an abuse
of discretion.  Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App.
2004).  The test for abuse of discretion Ais not whether, in
the opinion of the reviewing court, the facts present an appropriate case for
the trial court=s action; rather it is a question of
whether the trial court acted without reference to any guiding rules or
principles, and the mere fact that a trial court may decide a matter within its
discretionary authority differently than an appellate court does not
demonstrate such an abuse.@  State v. Herndon, 215 S.W.3d 901,
907B08 (Tex. Crim.
App. 2007) (quoting Howell v. State, 175 S.W.3d 786, 792 (Tex. Crim.
App. 2005)).  We do not substitute our judgment for that of the trial court.  Charles,
146 S.W.3d at 208.  We review the evidence in the light most favorable to the
trial court=s ruling and presume that all reasonable findings that
could have been made against the losing party were so made.  Id.  Only
when no reasonable view of the record could support the trial court=s ruling do we
conclude that the trial court abused its discretion by denying the motion for
new trial.  Id.

3.       Appellant=s Trial Counsel
Was Not Ineffective

A criminal defense lawyer has a duty to make an independent
investigation of the facts of a case, which includes seeking out and
interviewing potential witnesses.  Ex parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990).  A breach of the duty to investigate may result in a
finding of ineffective assistance Awhere the result
is that any viable defense available to the accused is not advanced.@  Ex parte
Ybarra, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982).  In defining the duty
to investigate, the United States Supreme Court has stated that Acounsel has a duty
to make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary.  In any ineffectiveness case, a
particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel=s judgments.@  Strickland,
466 U.S. at 691, 104 S.Ct. at 2066.

Here, the record reveals that appellant=s trial counsel
conducted an investigation of the facts and circumstances surrounding the
incident.  He met with appellant and appellant=s wife six to
eight times prior to the trial.  As a result of those meetings, appellant=s trial counsel
learned that appellant previously gave a statement to investigators that the
incident was the result of an accident.  According to appellant=s trial counsel,
he then based the defensive theory of the case on accident, not self-defense,
because of appellant=s prior statements to investigators.








a.       Not
Contacting the CPS Investigator or Subpoenaing CPS Records and Not
Contacting the Investigating Officers

Assuming without deciding that Mr. Dietz=s decisions to not
interview either the CPS investigators or the investigating officers, or
subpoena the CPS records, breached the first prong of Strickland,
appellant has failed to establish how these decisions harmed him.  Mr. Dietz, a
board certified criminal attorney with more than thirty years= experience,
testified that, in his experience, CPS investigators will not discuss
investigations over the telephone.  In addition, he testified that while he did
not subpoena the records, he reviewed the CPS records in the State=s file, was aware
of their content, and in his opinion, they were not going to be admissible. 
Because the record demonstrates that Mr. Dietz was aware of the content of the
investigation records, in fact, shaped appellant=s defense around
that information, appellant has not demonstrated how Mr. Dietz=s decisions to not
talk to the investigators or subpoena the CPS records establishes that there is
a reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different.

b.       Not
Retaining an Expert to Review E.P.=s Medical Records;
Not Attempting to Introduce Those Medical Records Into Evidence; Not
Investigating or Presenting Evidence Regarding the Effects of E.P.=s Medications; Not
Speaking to E.P.=s Treating
Physicians and Failing to Subpoena Those Doctors to Testify








Mr. Dietz testified he obtained a copy of E.P.=s medical records
and reviewed them.  He further testified the records revealed that E.P. was an
extremely disturbed child at that point in time, April and May of 2002.  Mr.
Dietz did not recall if the records indicated E.P. was having the same issues
in 2003 and 2004.  Mr. Dietz testified that while the records would have been
helpful to appellant=s defense, he did not follow through with
retaining the expert or attempt to introduce the records into evidence because
of the trial court=s ruling in response to the State=s motion in limine
arguing the records were not relevant and therefore not admissible.  Mr. Dietz
testified he was aware of the medications E.P. was taking.  Mr. Dietz also
testified regarding his efforts to investigate E.P.=s prior medical
treatment by contacting E.P.=s out-of-state physicians.  According to
Mr. Dietz, he attempted to contact them and they were unwilling to talk to him
over the telephone.

Assuming without deciding that Mr. Dietz=s decisions to not
(1) retain a medical expert; (2) attempt to introduce E.P.=s medical records
into evidence; (3) introduce evidence regarding the effects of E.P.=s medications into
evidence; and (4) subpoena E.P.=s out-of-state physicians to testify at
trial constituted deficient performance under the first prong of Strickland,
the record does not establish how those failures harmed appellant.  In this
case, appellant=s defense was based on accident and none
of the evidence appellant relies on here would be relevant to that defense. 
Thus appellant has not established by a preponderance of the evidence that
there is a reasonable probability that, but for trial counsel=s alleged
deficiencies, the result of the trial would have been different.

c.       Not
Retaining an Investigator or Going to the Scene








Appellant contends Mr. Dietz=s decisions to not
hire an investigator and to not visit the scene are evidence of deficient
performance.  Under these points, appellant fails to bring to our attention any
evidence in the record demonstrating a specific purpose for hiring an
investigator or a scene investigation and how those failures render Mr. Dietz=s performance
deficient.  A simple admission in the record that a criminal defense lawyer
made a decision not to hire an investigator, without more, is insufficient to
establish ineffective assistance of counsel.  The same is true of not going to
the scene.  The incident occurred in E.P.=s bedroom and
there were no disputed facts regarding that room.  Ultimately the case would be
determined by which version of the incident the jury believed and the physical
layout of E.P.=s bedroom would have no impact on that decision. 
Thus, assuming without deciding that Mr. Dietz=s decisions to not
retain an investigator and to not visit the scene meet the first prong of Strickland,
because appellant has failed to point out what purpose could have been served
by either the hiring of an investigator or visiting the scene, he has failed to
establish how Mr. Dietz=s allegedly deficient performance harmed
him. 

d.       Not
Investigating E.P.=s Character

Here, appellant contends that Mr. Dietz failed to
investigate E.P.=s character.  The evidence in the record
indicates otherwise.  The record demonstrates that Mr. Dietz, through his
meetings with appellant, learned about E.P.=s prior issues
with violence and his treatment by out-of-state physicians.  In response to
that information, Mr. Dietz obtained E.P.=s medical records
and reviewed them.  In addition, the record demonstrates that Mr. Dietz learned
of the past incidents when E.P. injured himself or made false reports about
adults causing him harm.  The record also reflects that Mr. Dietz attempted,
unsuccessfully, to contact E.P. as well as E.P.=s treating
physicians.  Mr. Dietz also testified that, even though he was aware of E.P.=s prior issues, he
still made the decision to pursue a defense of accident because that was in
line with appellant=s prior statements to investigators.  Finally,
during the trial, based on the information he had learned regarding E.P.=s character during
his investigation, while he was cross-examining E.P., Mr. Dietz got E.P. to
admit to having made false allegations of harm against another adult.  Here,
the record establishes that Mr. Dietz conducted a reasonable investigation of
E.P.=s character that
was in line with the defensive theory he adopted based on appellant=s prior statements
regarding the incident.  See Strickland, 466 U.S. at 691, 104 S.Ct. at
2066 (stating that defense counsel has a duty to make reasonable investigations
or to make a reasonable decision that makes particular investigations
unnecessary).  Because Mr. Dietz conducted a reasonable investigation into E.P.=s character and
adequately explained why further investigation was not necessary, appellant has
not established that Mr. Dietz=s representation of appellant was
deficient.

 

 








e.       Not
Investigating Appellant=s List of Twelve
Potential Witnesses

Finally, appellant contends Mr. Dietz=s decision to not
personally investigate the list of twelve potential witnesses he provided
constitutes ineffective assistance of counsel.  Once again, assuming without
deciding that Mr. Dietz=s admitted failure to either personally
seek out and interview each of the potential witnesses or to hire an
investigator to do so, violates the first prong of Strickland, appellant
has not demonstrated that this failure harmed him.

Appellant admitted that the majority of the witnesses on
his list were character witnesses regarding E.P.=s history of
violent behavior and lodging false complaints against adults.   Mr. Dietz
testified that he was aware of E.P.=s violent history
and still decided to rely on a defense theory of accident because that was in
line with appellant=s statements to investigators.  Because
there was no allegation of violent behavior on the part of E.P. on the day of
the incident, testimony regarding E.P.=s alleged prior
violence against other children would not have been relevant and thus
inadmissible.  With regard to the past false accusations made by E.P., during
cross-examination, Mr. Dietz got E.P. to admit to having made a false
allegation against an adult in the past so that evidence was before the jury at
trial.  In addition, the CPS investigator was on appellant=s potential
witness list.  As previously discussed, Mr. Dietz testified he was aware of the
content of the CPS investigation and largely based appellant=s defense on that
information.  Appellant has not pointed out in the record any additional
information that could have been obtained from any of the twelve witnesses,
including the CPS investigator, that would have, to a reasonable probability,
brought about a different result in the trial.

Based on our review of the record as a whole, we hold that
appellant has failed to show by a preponderance of the evidence that he
received ineffective assistance of counsel.  Because we have determined that
appellant did not receive ineffective assistance of counsel, we further hold
that the trial court did not abuse its discretion when it denied his motion for
new trial.  Accordingly, we overrule his first and second issues on appeal.








Conclusion

Having overruled each of appellant=s issues on
appeal, we affirm the judgment of the trial court.

 

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed November 6, 2007.

Panel consists of
Chief Justice Hedges and Justices Anderson and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  As a factual sufficiency review begins with the
presumption that the evidence supporting the jury=s verdict is legally sufficient, and since appellant challenges only
the factual sufficiency of the evidence, he effectively concedes that the
evidence is legally sufficient to sustain the conviction. See Clewis v.
State, 922 S.W.2d 126, 133B34 (Tex. Crim.
App. 1996).