Affirmed and Memorandum Opinion filed June 2, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00638-CR

___________________

 

Ruben A. Acosta, Appellant

 

V.

 

State of Texas, Appellee



 



 

On
Appeal from the 176th District Court

Harris County,
Texas



Trial Court Cause No. 1213749

 



 

 

MEMORANDUM OPINION

Appellant, Ruben A. Acosta, was convicted by a jury
of aggravated sexual assault of a child under six years of age.  Tex. Penal
Code Ann. § 22.021 (West Supp. 2009).  The jury then sentenced appellant to the
minimum possible sentence, 25 years’ confinement in the Institutional Division
of the Texas Department of Criminal Justice.  Tex. Penal Code Ann. §§ 12.32(a),
22.021(f)(1).  We affirm.

Factual and Procedural Background

            Appellant and
Deyanira Alcantara were involved in an on again, off again relationship for
more than twenty years.  The complainant is Alcantara’s five-year-old daughter,
R.B.  In February 2007, appellant married another woman.  In June 2007, without
telling her he was married, appellant resumed a sexual relationship with
Alcantara.

            On Friday,
September 7, 2007, appellant and Alcantara became involved in a heated
argument.  The exact subject of the dispute was contested.  According to Alcantara,
the argument was precipitated by the fact that appellant owed Alcantara money. 
Appellant agreed the dispute involved money, but testified the primary reason
for the argument was Alcantara’s discovery of appellant’s marriage to another
woman.

            Despite the
heated argument, the next morning appellant drove Alcantara and her two young
children, including the complainant, to Moody Gardens in Galveston for the
weekend.  Appellant and Alcantara disagreed about some of the details of their
Saturday afternoon activities at Moody Gardens.  According to Alcantara, she
did not show any affection toward appellant.  Appellant, on the other hand,
testified he kissed Alcantara on the mouth in front of the complainant. 
Appellant also testified he held Alcantara’s hand during the afternoon. 
According to appellant, the complainant became upset and protective of her
mother after these public displays of affection.

After returning to their hotel room for the evening,
the adults and children ate dinner, watched a movie, then the adults placed the
children in a bed located near the bed the adults were to occupy.  After the
children were asleep, appellant and Alcantara engaged in sexual activity in the
adjacent bed.  The details of this encounter were disputed.  According to
Alcantara, it was a quiet encounter involving only intercourse under the covers
of the bed and absolutely no oral sex.  Appellant on the other hand, testified
the encounter involved oral sex beside the bed as well as on top of the bed. 
Appellant also testified the session concluded with extended, noisy, sexual
intercourse on top of the bed.  Alcantara and appellant both testified regarding
whether the encounter awakened the children.  Alcantara denied appellant’s
assertion that the sexual activity was noisy, and testified that the children
remained asleep throughout the sexual activity.  Appellant admitted that he was
oblivious regarding whether the children were awakened during the sexual activity.

  The State alleged that, at some point during the
night, appellant went to the children’s bed and licked the complainant’s vagina. 
Appellant denied the State’s allegation that he sexually assaulted the
complainant.  Appellant testified that he fell asleep after the sexual
encounter with Alcantara and did not leave his bed until he was awakened early
the next morning by his cellular phone alarm.  Appellant also testified it was
Alcantara’s habit to stay awake most of the night watching television, and, consistent
with her habit, she was watching television when he fell asleep.

The next morning, appellant left the hotel and returned
to Houston to work.  Alcantara and the children remained at the hotel for the
day.  Appellant returned later on Sunday and gave Alcantra and the children a
ride back to Houston.  That evening, appellant went to Alcantara’s apartment
for dinner.  After Alcantara put her children to bed upstairs and closed the
door to their bedroom, she went back downstairs where she and appellant
listened to music, danced, and eventually engaged in sexual activity on the
couch.  Appellant’s and Alcantara’s accounts differed in the much the same way
their accounts differed regarding the Moody Gardens sexual encounter.

After the sexual encounter on the couch, appellant
and Alcantara went upstairs to her bedroom to go to sleep.  Alcantara testified
she was unable to sleep, so she left her bedroom, closed the door behind her,
and went downstairs to watch television.  Alcantara testified that when she
went upstairs early Monday morning to wake appellant to go to work, she noticed
the doors to both her bedroom as well as the children’s bedroom were open.

The next night, Monday, September 10, 2007, appellant
went to Alcantara’s house after work.  When Alcantara was putting the children
to bed, the complainant asked her if her friend, appellant, was leaving.  When
Alcantara asked why, the complainant told her that he “licked” her on the
vagina.  When Alcantara confronted appellant, he denied assaulting the
complainant.  Alcantara called the police the next day.

During the guilt-innocence phase of the trial, the
State called Alcantara, the complainant, and Dr. Marcella Donaruma, the
pediatrician who examined the complainant.  Appellant testified in his own
defense but called no other witnesses.  After the jury found appellant guilty,
the State called no witnesses during the punishment phase and appellant called
his wife and mother to testify to his good character.  The jury sentenced
appellant to 25 years’ confinement in the Institutional Division of the Texas
Department of Criminal Justice, the minimum sentence.

Appellant filed a motion for new trial.  In his
motion appellant argued he was entitled to a new trial because his trial
counsel was ineffective.  Appellant asserted his trial counsel was ineffective
because he (1) failed to investigate the facts of the case; (2) failed to call
character witnesses during the guilt-innocence phase of the trial; (3) failed
to call sufficient character witnesses during the punishment phase of the
trial; (4) was ineffective cross-examining witnesses; and (5) failed to call
witnesses during the guilt-innocence phase of the trial who could attack the
character of Alcantara and expose her alleged longstanding prejudice against
appellant which, appellant asserts, may have influenced the complainant’s
testimony.

Appellant attached numerous affidavits to his motion. 
Most of the affidavits came from members of appellant’s family and consist of
attacks on Alcantara’s character and claim Alcantara is lying about appellant’s
sexual assault on the complainant.  Appellant also includes his own affidavit
in which he attack’s Alcantara’s character as well as his trial counsel’s
handling of his trial.  Two other affidavits, one from a co-worker of appellant
and the other from his mother-in-law, were attached.  Both of these affidavits
attest to appellant’s character and the affiant’s belief that he is innocent. 
There was also an affidavit from appellant’s daughter in which she detailed her
opinion of Cohen’s handling of appellant’s case and her belief that appellant
was innocent.  The final affidavit attached to the motion for new trial came
from the criminal defense attorney handling the motion for new trial hearing
for appellant.  In this affidavit, the attorney opined how a competent criminal
defense lawyer would prepare for trial.

The trial court conducted a hearing on appellant’s
motion on September 24, 2009.  The trial court began the hearing by stating:

As previously discussed with the parties, the Court is
limiting today’s hearing … to the issue concerning the allegations in the
motion for new trial.  We have affidavits attached that there was independent
evidence that the complainant’s mother, Deyanira Alcantara, had some kind of
animus against [appellant] and that perhaps influenced the child’s testimony. 
Whether or not that evidence was out there, whether or not it was investigated,
and likewise, the other issue of there’s quite a bit of character evidence
attached.  As all parties agreed, [appellant] was assessed the minimum sentence
by the jury, so there could have been no harm in not putting that on at the
punishment, but if counsel chooses to go into any particular reasons about why
character evidence may have been or should have been raised at the
guilt-innocence phase the Court will also likewise entertain questions in that
regard.

Both sides then agreed with
the trial court’s statement of what was to be addressed during the hearing.

            The only witness
who testified during the motion for new trial hearing was appellant’s trial
counsel: Alan Cohen.  Cohen testified regarding his handling of appellant’s
defense.  The first subject Cohen discussed during the hearing was the
allegation that Alcantara was biased against appellant.  Cohen testified that
he became aware very early in his representation of appellant that appellant
and his family claimed the allegations against appellant were due to a bias on
the part of Alcantara.  Cohen also testified that, as he learned about the
history between Alcantara and appellant, he realized there was a “lingering
anger and bitterness” on the part of appellant’s family because appellant’s
affair with Alcantara resulted in a divorce from his first wife.  Cohen also
pointed out to the court that “the bias was something that occurred many years
ago” and he decided not to pursue it because appellant “and … Alcantara continued
to have relationships, both romantic and highly sexual relationship [sic], even
after the divorce had occurred 18 years ago.”  Cohen also explained that he
came to believe “that the issues dealing with bias … were certainly exaggerated
by the Acosta family and were trying to be used as an excuse for his
behavior.”  In addition, Cohen testified he did not believe Alcantara testified
against appellant as a result of any bias she held toward him.  Cohen told the
court Alcantara

placed herself in a most humiliating position in front of
the jury dealing with the sexual aspects of their relationship.  At no point
when I was doing the cross-examination or when the prosecutor was doing her
direct did I ever detect any sort of bias in the allegations being made against
[appellant].  …[I]f I felt I detected bias I certainly would have exploited
that during the course of the trial and would have developed it, but in my
opinion, as the defense attorney, I certainly did not hear bias come out.  

Cohen then testified: “I did
not feel that there was any bias, any romantic bias that the family was
suggesting that was somehow trying to prejudice my client.  I just did not see
it.  I didn’t see it then and I certainly do not see it now.” 

            Cohen also discussed
the complainant’s testimony during the motion for new trial hearing.  According
to Cohen, “the primary witness was the child, not the mother.  It was the
child’s testimony that could not be shaken.  The testimony of the child
reflected very closely to what she said in her C.P.S. interview.”  Cohen
testified “[i]t was very clear to me this case was about the child and the
child’s relationship with [appellant], and I absolutely firmly believe this,
particularly after looking at the C.P.S. tape and dealing with the testimony
given by that little five-year-old girl and her spontaneity in making the
accusation against [appellant].  The mother – my personal feelings was that the
mother had absolutely no influence on what that child said.”  Cohen also
recounted his effort to satisfy appellant’s family’s concerns regarding the
complainant’s testimony.  According to Cohen, he hired a psychologist to review
the complainant’s videotaped statement to authorities, and the psychologist
verified the complainant was “speaking freely and did not appear to have been
prompted in any way by [Alcantara].”

            Cohen also
testified during the hearing regarding his investigation of the case and his
decision-making process for handling appellant’s defense.  According to Cohen,
he “developed [his] defense based on the graphic sex that [Alcantara] and
[appellant] were having within, literally within feet of the children, and that
was the focus of my defense.  It had nothing to do with bias.  What it had to
do with possibly parenting skills on the part of the mother to have sex in
front of her child, but that was certainly voluntary between [appellant] and …
Alcantara.”  Cohen also hired an investigator in the case, but he investigated
“a different matter, in support of what I felt was the most cost effective way
to use the investigator.”  The investigator’s efforts did not address
Alcantara’s alleged bias because, according to Cohen, that allegation
originated eighteen years before trial and it was not “relevant to the present
day to support the issues of bias.”

            As part of his
trial preparation, Cohen met with both appellant and his wife numerous times. 
Cohen also told the court that, as part of his trial preparation, he met with
at least five other people associated with appellant.                      

In his preparation of appellant’s defense, Cohen
reviewed the offense reports from both Harris and Galveston Counties.  Cohen
also watched the complainant’s video and, as already mentioned, had a
psychologist review it as well.  Cohen also obtained a copy of appellant’s recorded
police statement.  Cohen reviewed appellant’s statement and learned that in his
statement appellant claimed the complainant made up the accusations against him
because she did not like him.  Cohen also determined that during his statement,
appellant never mentioned anything about the complainant’s accusations against
him being the result of a bias held by Alcantara.  Cohen also testified he knew
that if he adopted the bias defense as his trial strategy, the prosecution
could have impeached appellant using his police statement, and that would have
hurt appellant’s case.  Cohen concluded his testimony by stating he was
familiar with the facts of appellant’s case as well as the law governing
appellant’s case and he developed his trial strategy based on that knowledge.

The trial court denied appellant’s motion for new
trial and this appeal followed.

Discussion

            In a single issue
on appeal, appellant contends the trial court “abused its discretion in denying
appellant’s motion for new trial when it did not conduct a hearing to consider
the affidavit evidence which raised an issue of ineffective assistance of
counsel.”  It is clear from the record on appeal, portions of which are quoted
above, that appellant is incorrect in his assertion that the trial court
refused to conduct a hearing on appellant’s motion for new trial.  However,
since appellant, despite the very narrow focus of his stated issue, argues
within his brief that the trial court abused its discretion when it denied his motion
for new trial based on the allegation of ineffective assistance of counsel; we
construe his issue accordingly.

I.         The Standard of
Review

            In reviewing
claims of ineffective assistance of counsel, we apply a two prong test.  See
Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
(1984)).  To establish ineffective assistance of counsel, appellant must prove
by a preponderance of the evidence that (1) his trial counsel’s representation
was deficient in that it fell below the standard of prevailing professional
norms, and (2) there is a reasonable probability that, but for counsel’s
deficiency, the result of the trial would have been different.  Id.

            An accused is
entitled to reasonably effective assistance of counsel.  King v. State,
649 S.W.2d 42, 44 (Tex. Crim. App. 1983).  However, reasonably effective
assistance of counsel does not mean error-free representation.  Ex parte Felton,
815 S.W.2d 733, 735 (Tex. Crim. App. 1991).  When evaluating a claim of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of the case.  Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  There is a strong
presumption that counsel’s actions and decisions were reasonably professional
and were motivated by sound trial strategy.  Salinas, 163 S.W.3d at 740;
Stults v. State, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.]
2000, pet. ref’d).  To overcome the presumption of reasonable professional
assistance, “any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.”  Thompson, 9 S.W.3d at 814.  When determining the
validity of an ineffective assistance of counsel claim, any judicial review
must be highly deferential to trial counsel and avoid the deleterious effects
of hindsight.  Ingham, v. State, 679 S.W.2d 503, 509 (Tex. Crim. App.
1984).  When the record is silent as to the reasons for trial counsel’s
conduct, a finding that trial counsel was ineffective would require
impermissible speculation by the appellate court.  Stults, 23 S.W.3d at
208.  Absent specific explanations for counsel’s decisions, a record on direct
appeal will rarely contain sufficient information to evaluate an ineffective
assistance claim.  Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). 

If a criminal defendant can prove trial counsel’s
performance was deficient, he still must prove he was prejudiced by counsel’s
actions.  Thompson, 9 S.W.3d at 812.  This requires the defendant to
demonstrate a reasonable probability that the result of the proceeding would
have been different if the trial counsel had acted professionally.  Id. 
A reasonable probability is a probability sufficient to undermine confidence in
the outcome.  Malett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

We review the denial of a motion for new trial for an
abuse of discretion.  Rodriguez v. State, 329 S.W.3d 74, 81 (Tex.
App.—Houston [14th Dist.] 2010, no pet.).  The test for abuse of discretion “is
not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court’s action; rather it is a question of
whether the trial court acted without reference to any guiding rules or
principles, and the mere fact that a trial court may decide a matter within its
discretionary authority differently than an appellate court does not
demonstrate such abuse.  State v. Herndon, 215 S.W.3d 901, 907–08 (Tex.
Crim. App. 2007) (quoting Howell v. State, 175 S.W.3d 786, 792 (Tex.
Crim. App. 2005)).  We do not substitute our judgment for that of the trial
court.  Holden v. State, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).  We
review the evidence in the light most favorable to the trial court’s ruling and
presume that all reasonable findings that could have been made against the
losing party were so made.  Id.  Only when no reasonable view of the
record could support the trial court’s ruling do we conclude that the trial
court abused its discretion by denying the motion for new trial.  Id. 

II.        Appellant’s Trial
Counsel Was Not Ineffective

            Initially,
appellant contends Cohen was ineffective because he failed to investigate and
present mitigating evidence.  According to appellant, Cohen failed to present
evidence of Alcantara’s prejudice against appellant which, according to
appellant’s theory, would establish Alcantara and the complainant fabricated
the whole incident.   We disagree.

            A criminal
defense lawyer has a duty to make an independent investigation of the facts of
a case, which includes seeking out and interviewing potential witnesses.  Ex
parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).  A breach of the
duty to investigate may result in a finding of ineffective assistance “where
the result is any viable defense available to the accused is not advanced.” Ex
parte Ybarra, 629 S.W.2d 943, 946 (Tex. Crim. App. 1982).  In defining the
duty to investigate, the United States Supreme Court has stated that “counsel
has a duty to make reasonable investigations or to make a reasonable decision
that makes particular investigations unnecessary.  In any ineffectiveness case,
a particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel’s judgments.”  Strickland, 466 U.S. at 691, 104 S.Ct. at
2066.

            As recounted
above, the record establishes Cohen conducted an investigation into the facts
and circumstances surrounding the incident.  The record also reveals that as
part of his investigation, Cohen learned of Alcantara’s alleged bias against
appellant and determined it was exaggerated by appellant’s family and was the
result of events that occurred long before.  The record also demonstrates Cohen
reviewed appellant’s statement and learned appellant told the police the reason
behind the complainant’s allegations against him was the complainant’s dislike
of him, not that the complainant fabricated the charge as a result of her
mother’s bias.  We conclude that Cohen, based on the information he learned as
a result of his investigation into the facts and law of the case, made a
reasonable decision to not build appellant’s defense around Alcantara’s alleged
bias.  We further hold that since Cohen’s decision not to pursue the bias
defense was reasonable, his decision to not call the witnesses who would
testify about Alcantara’s alleged bias was also reasonable.  We reject
appellant’s first contention that Cohen’s performance was deficient as a result
of a failure to investigate and use the bias defense during appellant’s trial.

            Appellant also
alleges Cohen’s performance was deficient because he did not call any character
witnesses during the guilt-innocence phase of the trial.[1]  For the same
reasons stated above, we conclude the trial court could have reasonably
concluded that Cohen’s decision to not call character witnesses during the
guilt-innocence phase of appellant’s trial was part of his trial strategy.  See
State v. Thomas, 768 S.W.2d 335, 337 (Tex. App.—Houston [14th Dist.] 1989,
no pet.) (holding that the decision to call a witness is generally a matter of
trial strategy).

            Finally,
appellant alleges Cohen’s performance was deficient because he did not prepare
appellant for the prosecutor’s cross-examination based on appellant’s statement
to the police.[2] 
This subject was not addressed during appellant’s questioning of Cohen during
the motion for new trial hearing.  However, during trial appellant testified he
remembered one hundred percent what he told the police in his statement.  In
addition, Cohen did testify during the motion for new trial hearing that he was
familiar with appellant’s recorded statement and based his defense on the
contents of that statement.  Also, Cohen testified he met with appellant
numerous times prior to trial.  Based on the above evidence, we conclude the
trial court could have reasonably concluded that Cohen adequately prepared
appellant for giving his trial testimony.

            Based on our
review of the record as a whole, we hold appellant has failed to show by a
preponderance of the evidence that he received ineffective assistance of
counsel.  Because we have determined appellant’s trial counsel was not
ineffective, we further hold the trial court did not abuse its discretion when
it denied appellant’s motion for new trial.  Appellant’s single issue on appeal
is overruled.

Conclusion

            Having overruled
appellant’s single issue on appeal, we affirm the trial court’s judgment. 

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Seymore, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] To the extent appellant’s
issue on appeal could be construed as arguing Cohen did not call enough
character witnesses during the punishment phase of the trial, assuming without
deciding that decision  meets the first Strickland prong, because
appellant received the minimum possible sentence, we conclude the deficient
performance was harmless. 





[2] While appellant generally
asserts Cohen was not prepared to cross-examine witnesses, he does not brief in
what manner he was ineffective cross-examining the three witnesses called by
the State: Alcantara, the complainant, and Dr. Donaruma.  Therefore, we
conclude appellant has waived any complaint he may have had regarding Cohen’s
cross-examination of these witnesses.  Tex. R. App. P. 38.1(i).